purpose for which they were procured, and the difficulty of replacing them. The jury were also entitled to take into consideration the value of the property to the plaintiff. Stickney v. Allen, 10 Gray, 352; Starkey v. Kelly, 50 N. Y. 676. The fact that the negatives were not good ones, and were not well taken, was, of course, to be considered; but, in addition to that, the jury might also consider that when one has gone a long way to obtain photographs of the scenery of a foreign land, which is difficult to reach, or where the photograph is of some incident which is not likely to be repeated, even a poor representation may be of considerable value, if a picture can be printed from it, because, as far as it goes, it is a correct representation of what occurred. All these things were to be considered by the jury. We cannot say that the amount of the verdict which they rendered was improper.

The judgment and the order appealed from should therefore be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.

---

## DAVIS v. STANDARD NAT. BANK.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

1. BANKS AND BANKING—CHECKS—REFUSAL TO PAY—LIABILITY TO DEPOSITOR —TORT—DAMAGES.

Where plaintiff in an action for tort for injury to his credit had deposited a note with the defendant bank for discount, and thereafter, and subsequent to the maturity of the note, drew several checks on the bank, which were dishonored because the note deposited had not been paid at maturity, an instruction that if the jury believed the note was discounted, and that the defendant bank acted through malicious, wrongful, and improper motives, it was liable for the actual money loss of the plaintiff, and also for such substantial damages for the impairment of his credit, and for his feelings and mental anxiety over the matter, as directly resulted from such wrongful acts, was proper.

2. SAME—PRESUMPTION OF MALICE.

Where the defendant bank dishonored the checks of the plaintiff on four successive occasions, and without reasonable excuse, when the plaintiff had funds deposited in the bank, and great injury resulted to the credit of the plaintiff from such action, such facts are sufficient to justify the legal inference that the bank acted with malice.

3. SAME—INSTRUCTION—LIABILITY OF BANK—STOCKHOLDER IN LUMBER COMPANY.

A note drawn by a lumber company, in which the defendant bank was a large stockholder, was averred by the plaintiff to have been deposited by him with the bank for discount at the request of the vice president of the bank, who represented it in the management of the affairs of the lumber company, but the bank claimed the note was merely left for collection. The note was subsequently paid by a certified check of the lumber company on the bank. *Held*, that the refusal to instruct that the fact that the bank was a stockholder in the lumber company did not tend to prove it was liable to pay the note was error, since the jury might easily have given such an inference too great weight in determining whether or not the note was discounted.

Appeal from trial term, New York county.

Action by Decatur W. Davis against the Standard National Bank. From a judgment in favor of the plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Jonathan C. Ross, for appellant.
Julius M. Mayer, for respondent.

RUMSEY, J. The plaintiff alleged in his complaint that, being a depositor and having a regular account with the defendant, he drew at various times checks upon it for different sums, but amounting in all to $425, which was considerably less than the amount standing to his credit in the defendant bank; that payment of these checks as they were presented was refused by the bank, and the checks were dishonored and protested. He further alleged that "through the gross negligence and mismanagement of the defendant, and its willful, wrongful acts, as above set forth, and through no fault or wrongdoing of his own, plaintiff has suffered grievous loss and damage to his credit and business standing, great mental anxiety and suffering." When the action came to trial the plaintiff elected to try the case upon the theory that he sought to recover damages for a tort, and the action proceeded from that time on upon that theory. The plaintiff had a verdict for a considerable amount, and, the defendant's motion for a new trial having been denied, it appealed from the order denying the motion, and from the judgment entered upon the verdict.

The plaintiff's account with the defendant bank was opened by the deposit of a note for $1,137.50 on the 25th day of August, 1897. The defendant insists that this note was not discounted, but was received for collection only, so that the plaintiff was not to receive credit for the amount of the note until it was paid, and that, as the note was not paid at maturity, the plaintiff had no funds in the bank to protect his checks. The plaintiff, on the contrary, claims that the note was discounted by the bank, and the amount placed to his credit on the 25th of August, 1897. This disputed question of fact was submitted to the jury by the learned trial justice, and the jury, in finding for the plaintiff upon the whole case, must have determined that question in his favor. The case will therefore be discussed hereafter upon the theory that the note was discounted for the plaintiff, and that the proceeds of it were put to his credit on the 25th of August.

It is quite true that the note was not paid at its maturity, which was on the 31st day of August, and that all of the checks which were dishonored were presented after that time. But if the note was discounted by the defendant, as the jury have found, that matter is of no importance. The discount of the note was a sale of it by the plaintiff to the defendant, and when the sale was made he was entitled to have the proceeds put to his credit, if they were not paid to him in cash. Although the note may not have been paid at maturity, that fact did not take away from the plaintiff the amount of its credit until, at least, he had been charged as indorser upon the note, in which case, if the bank had seen fit to charge back the amount of the note to his account, it would have been justified in so doing. But it appears affirmatively that he was not charged as indorser after the dishonor of the note. There was no authority for the bank, therefore,

to call upon him to pay the note, and the fact that it was dishonored did not give to the bank any remedy against him, or any right to refuse his check.

The serious questions presented on this appeal arise upon the defendant's .exceptions. Those more especially relied upon are the ones taken to the charge of the court in respect to the question of damage. In regard to that matter the court charged as follows:

"But if you believe that it was discounted, and that the bank acted through malicious and willful and wrongful and improper motives, then you may award to the plaintiff more than the actual money loss and damage proved in this case; and you may award him such substantial damages for the impairment of his credit, and for his feelings and mental anxiety over the matter, as directly and approximately resulted from the wrongful acts of the defendant in respect to the matter."

This charge was excepted to, and the defendant, by its exception and by its requests to charge, has fully raised the. question whether the rule of damages laid down therein was correct. In discussing that question, two things must be borne in mind: The first is that the action was tried and disposed of as one to recover damages for a tort; and the second is that the jury were especially instructed that the plaintiff was not entitled to recover any more damages than the actual money loss, unless they believed that the bank acted through willful, wrongful, and improper motives. It was claimed by the defendant that there was no evidence tending to show that the bank had acted with malice towards the plaintiff in refusing to honor his checks, because no one connected with the bank had any willful intent to injure the plaintiff when the payment of the check was refused. But, while to establish malice for certain purposes such a willful intent is necessary, that intent is not involved in the legal definition of the term "malice." Whenever the wrongful act is done intentionally, without just cause or excuse, a legal inference of malice arises therefrom. Bromage v. Prosser, 4 Barn. & C. 247, 255; Com. v. Snelling, 15 Pick. 331, 336. And where the wrongful act has been repeated, as in this case, there is all the more propriety in permitting the jury to infer that the person committing it acted intentionally, and without regard to the rights of the person against whom the act was directed. The jury were justified in concluding that the dishonor of the plaintiff's checks took place under such circumstances as would warrant an inference of legal malice on the part of the bank.

The fact that the action was not brought for the breach of a contract, but for a tort, operates not only to distinguish several of the cases cited in respect of the failure of the bank to pay its customers' checks, but to enlarge somewhat the considerations which may be presented to the jury as bearing upon the question of damage. There is a considerable distinction, so far as the rule of damages is concerned, between the actions brought merely for the breach of a contract and those founded upon tort. Where one sues to recover for the breach of a contract, the measure of damages is usually such an amount only as will repay him for the money loss which he has suffered because of the failure of the defendant to do

as he agreed. In actions of that nature, injuries to the feelings are not to be considered. It is assumed in such actions that, where one has been repaid the sum of money which he has lost because of the failure to perform the contract, he is in precisely the same situation as if the contract had been performed, and therefore he is not entitled to further damages. But an action brought for a tort involves, not only a notion of the violation of the duty which the defendant owes to the plaintiff, but it may also be based upon a malicious and wrongful act of the defendant; and in such a case as that, where the act results in substantial damages, the jury are entitled to consider, not only the actual money damages, but such other damages as necessarily arise out of the act; and in addition, if the effect of such damage is to produce mental suffering and anxiety, they are at liberty to award damages on that head, also. Brown v. Railway Co., 54 Wis. 342–351, 11 N. W. 356, 911; Suth. Dam. §§ 45 et seq., 48. The damages which they were permitted to give in this case were, in the first place, such damages as would repay to the plaintiff the actual money loss immediately arising from the dishonor of his checks; they being the expenses to which he was put because of the notice of protest, and the expenditures made by him in his attempt to arrange matters after he learned that the checks had been dishonored. As to this there was no complaint. In addition, the jury were permitted to award him, also, such substantial damages for the impairment of his credit as they might conclude he had suffered. As to such damages the defendant objects that there is no proof that the plaintiff suffered them, because it is said that it did not appear that he was a trader, or that he was engaged in any business which would be affected by the knowledge on the part of any one that he had drawn checks on a bank where he had no account. But it did appear that the plaintiff was engaged in actual business, and that it was in the course of his actual business that these checks upon the defendant had been drawn. Ordinarily an honest man draws checks only on a bank where he has an account, and though sometimes, by mistake, he may draw checks when he has overdrawn his account, yet, if he does that repeatedly, any one knowing it would be sure to conceive an unfavorable opinion, not only as to his honesty, but also as to his credit; so that the act of a bank in refusing to pay its customer's checks is something more than a mere nominal breach of the contract, to be paid for by requiring the bank to make good the money which its act has cost him. Every one knows that the effect of such a refusal is to throw discredit upon the man who drew the check, and to impair his credit with the person with whom he is dealing; and when it is made to appear that that act has been done by the bank, not once, but four times in close succession, with full knowledge that he had funds in the bank sufficient to pay these checks, it must be admitted that such action on the part of the bank is likely to impair the credit of the person who drew the checks, among the men with whom he is accustomed to deal, and who become aware of the fact that his checks have been dishonored by the bank. For these reasons the jury might infer that the credit

of the plaintiff was impaired by this act of the defendant bank, and this conclusion is sustained by many cases. Rolin v. Steward, 14 C. B. 599; Schaffner v. Ehrman, 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 134; Patterson v. Bank, 130 Pa. St. 419, 18 Atl. 632; Morse, Banks, § 458. These cases were all actions brought for the breach of the implied contract on the part of the bank to pay the checks, and in none of these actions does it appear that there was an allowance for the mental suffering and anxiety of the plaintiff arising from the fact of the impairment of his credit. But, because they are actions upon contract, they are not authorities against allowing such damages. As we have seen, when the animus is a question for the jury, they are at liberty, when they find that damages are suffered because of the tort, not only to award the actual money damages sustained, but damages for the mental suffering and anxiety which accompany the material damages resulting from the wrongful act. This mental anxiety, of course, must be that which is only the result of the act of the defendant. If it can be fairly inferred that as the result of that act the plaintiff, who was a prosperous business man, in good standing, has suffered damage to his credit, so that his status in that regard has been changed, and that has taken place because of the wrongful and intentional act of the defendant, it is not too much to infer that as a result of that act, and the damages caused by it, the plaintiff has suffered anxiety and the feeling of humiliation which would necessarily follow the consciousness of a loss of one's business reputation. The case is quite analogous to an action of slander. It is quite true that in such a case as this the bank says nothing which can be laid hold of as the basis of the action, but by its act it affirms that the person who has drawn checks upon it has made an effort to obtain money from the bank, and to impose his checks upon his neighbors with whom he deals, knowing that they would not be honored when presented; and that is substantially saying that in respect to that matter his dealing is dishonest, and necessarily impairs his credit as an honest man. The jury were therefore justified in considering that an act of the bank which raised an inference that the plaintiff was not an honest man necessarily inflicted upon the plaintiff that humiliation and mental anxiety which follow upon the knowledge by a man that he has been accused of the dishonest act which the action of the bank has given rise to. The court therefore was correct in instructing the jury as it did in regard to the question of damages, and the exceptions in that respect must be overruled.

The note presented by the plaintiff for discount was made by the New York Lumber Company. Evidence had been given that the Standard National Bank was a large stockholder in that company, and that this note given by that company had been received by the plaintiff, at the request of the vice president of the bank, to pay for insurance which the plaintiff had written upon the property of the New York Lumber Company. It was also made to appear by the cross-examination of the vice president of the bank that he represented the bank in the management of the affairs of the lumber company. It was also shown that at the time this note fell due the

New York Lumber Company had no money in the bank with which to meet it, and that it was subsequently paid by the certified check of the lumber company upon the defendant bank, but that, from the time the note fell due and the time the certified check was drawn, the company had no money to its credit sufficient to meet the amount of the check. So that in fact the jury might have inferred that the note of the New York Lumber Company was actually paid by the bank, which was a large stockholder in the company; and that fact was a matter to be gravely considered by the jury as bearing upon the proposition whether the note of the New York Lumber Company made to the plaintiff, and presented to the bank at the request of the vice president, had in fact been discounted at the time it was presented. The defendant requested the court to charge "that the fact that the bank owned stock of the New York Lumber Company does not prove or tend to prove that the bank was liable for the payment of the note of the New York Lumber Company." In respect to that request the court said, "I decline to charge that, and say in respect to that request that the jury may take that into account as one of the circumstances bearing upon the issues involved." The issue involved was the question whether the note had been discounted by the bank for the plaintiff. While the jury were entitled to take into consideration all the facts alluded to above, they should not have given to those facts any other weight than as stated above, and the direction to be given to them should have been so strictly guarded that no greater legal inference could have been derived from them than properly arose from them. The defendant was entitled to have those inferences defined, and to have negatived any idea that the action of the bank in paying the note of the lumber company was taken in response to any legal duty imposed upon it in that regard. The request should therefore have been granted, and the failure to so grant it permitted the jury to give to the facts spoken of an application which was much greater than they should have received. For the failure to so charge as to the weight to be given to these facts, the defendant is entitled to a new trial. This renders it unnecessary to consider the other questions raised by the exceptions. The judgment and order must therefore be reversed, with costs, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON and McLAUGHLIN, JJ., concur.

BARRETT, J. I agree with Justice RUMSEY upon all the questions which he discusses, except the last. As to that I am unable to concur. The proposition which the learned trial justice was requested to charge—"that the fact that the bank owned stock of the New York Lumber Company does not prove or tend to prove that the bank was liable for the payment of the note of the New York Lumber Company"—was an abstraction. It was technically correct, but, as applied to the issue submitted to the jury upon the pleadings and proofs, it was misleading. The proposition was

treated correctly when the learned trial justice declined to charge it as put, but told the jury that they might take it into account as one of the circumstances bearing upon the issues involved. In my judgment, no reversible error was committed upon the trial. I think, however, that the damages were excessive, and for that reason I concur in the granting of a new trial.