### KAVANAUGH v. McINTYRE et al.

(Supreme Court, Appellate Division, Third Department. November 11, 1908.)

1. TROVER AND CONVERSION (§ 9*)—ELEMENTS—DEMANDS.

Where a person, though lawfully in possession of personal property, unlawfully disposes of it and puts it beyond his power to make return on demand, a demand is not required to sustain an action for conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 66, 70; Dec. Dig. § 9.*]

2. WORDS AND PHRASES—"MALICE."

The term "malice," in its ordinary sense, implies hatred, spite, or ill will; but in legal parlance it is frequently used in a different sense, depending on the connection, and may mean "a wrongful act done intentionally without just cause or excuse." In legal parlance, malice "may be actually implied whenever there is a deliberate intention to do a grievous wrong without legal justification or excuse. In civil controversies, the very essence of malice is a disposition or willfulness to do a wrongful act greatly injurious to another" (quoting Words and Phrases, vol. 5, p. 4298 et seq.).

3. BANKRUPTCY (§ 424*)—"WILLFUL"—"MALICE."

The word "willful," as used in Bankr. Act July 1, 1898, c. 541, 30 Stat. 550, 551 (U. S. Comp. St. 1901, p. 3428), § 17, as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026), providing that a discharge in bankruptcy shall relieve the bankrupt from all provable debts except liabilities for obtaining property by false pretenses, or false representations, or for "willful and malicious" injuries to the person or property of another, means nothing more than intentional; while the word "malice," as there used, is intended to imply nothing more than a disregard of duty which is involved in the intentional doing of a willful act to the injury of another.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 424.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481; 7835–7836.]

4. ARREST (§ 44*)—CIVIL ACTION—APPLICATION TO VACATE—RECORD.

On an application to vacate an order of arrest in an action for conversion, the court is not limited to the complaint to ascertain the char-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

acter and circumstances of the tort alleged, but may examine for that purpose the entire record, including the affidavits used on the motion. [Ed. Note.—For other cases, see Arrest, Dec. Dig. § 44.*]

**5. BANKRUPTCY (§ 392*)—DISCHARGE—WILLFUL INJURY TO PROPERTY—CONVERSION—ARREST OF BANKRUPT.**

> Bankr. Act July 1, 1898, c. 541, § 63, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), provides that debts may be proved and allowed against a bankrupt which are founded on a contract, express or implied; and section 17 (30 Stat. 550, 551 [U. S. Comp. St. 1901, p. 3428]), as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026), declares that a discharge shall relieve of all provable debts, except liabilities for obtaining property by false pretenses or false representations, or for willful or malicious injuries to the person or property of another, or debts created by the bankrupt's fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity. *Held*, that where a bankrupt procured possession of plaintiff's securities as pledgees for advances, and immediately sold and continued to sell them without plaintiff's knowledge, after more than sufficient to pay the debt had been realized, and no justification was offered, their acts constituted larceny and a willful and malicious conversion, from which their discharge in bankruptcy could not relieve them, so that they were not exempted from arrest in plaintiff's action for conversion by Bankr. Act July 1, 1898, c. 541, § 9, 30 Stat. 549 (U. S. Comp. St. 1901, p. 3425), providing that a bankrupt shall be exempt from arrest on civil process, except such issued by a state court and served within the state on a debt from which the bankrupt's discharge would not be a release.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 619–622; Dec. Dig. § 392.*]

Appeal from Special Term, Saratoga County.

Action by Frederick W. Kavanaugh against Thomas A. McIntyre and others. From an order denying the application of John G. McIntyre to vacate an order of arrest, he appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Patton & Patton (Robert H. Patton, of counsel), for appellant.
Myer Nussbaum, for respondent.

COCHRANE, J. The complaint alleges the copartnership of the defendants; that on February 5, 1908, plaintiff was the owner of certain specified stocks, the certificates of which were in the possession of the firm of A. O. Brown & Co.; that there was due upon such stocks the sum of $3,853.32, and that the plaintiff on the day mentioned was entitled to the possession of said stocks on payment of said amount; that on said day the plaintiff instructed the defendants to take over said stocks from said firm of A. O. Brown & Co., and to advance thereon said sum of $3,853.32; and that such stocks were turned over and delivered by A. O. Brown & Co. to the defendants as such copartners, the latter advancing thereon said sum of $3,853.32. The complaint then alleges that subsequent to the sale and disposition of said stocks by said defendants as thereafter alleged, and on or about the 27th day of April, 1908, an involuntary petition in bankruptcy was filed against the defendants as such copartners in the District Court of the United States for the Southern District of New York, and that receivers of said firm were subsequently appointed and duly

qualified; that on April 28, 1908, the plaintiff tendered to said receivers the balance due and interest upon said stocks, and demanded delivery of the same which was refused; that subsequent to said 5th day of February, 1908, the said defendants as such copartners wrongfully converted and disposed of said stocks and the avails thereof to their own use, to the damage of plaintiff in the sum of $30,000, for which sum judgment is demanded. On this complaint, and on an affidavit setting forth more in detail the facts of the alleged conversion, plaintiff procured an order of arrest, directing the sheriff of New York county to arrest the defendants and to hold each of them to bail in the sum of $5,000. This order has been executed, and the appellant, having given the bail thereby required, moved to vacate the order of arrest; and from an order denying such motion this appeal is taken.

The complaint is assailed for insufficiency on the ground that there is no allegation of a demand on the defendants for a return of the property, which lawfully came into their possession. From the entire complaint it appears that after the defendants procured possession of the stocks and before the petition in bankruptcy was filed against them they sold and disposed of the stocks and devoted the avails thereof to their own uses. When a person, although lawfully in possession of property, unlawfully disposes of the same and puts it out of his power to make return thereof, a demand for such return would be a useless performance, and the law requires neither the allegation nor proof of such demand. This complaint alleges an unlawful sale and disposition of the property, and it is such unlawful act which constitutes the conversion. While the circumstances of the sale and disposal of the stocks are not alleged, and the complaint in that particular may be vague and indefinite, yet I entertain no doubt as to its sufficiency as against a demurrer, were one interposed. The appeal, therefore, cannot be sustained on the ground that the complaint will be dismissed.

A more difficult question arises concerning the effect of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3425]) on the cause of action alleged. The provisions of that act applicable to the present situation are as follows:

"Sec. 9. Protection and Detention of Bankrupts.—(a) A bankrupt shall be exempt from arrest upon civil process except in the following cases: * * * (2) When issued from a state court having jurisdiction, and served within such state, upon a debt or claim from which his discharge in bankruptcy would not be a release. * * *"

"Sec. 17. Debts Not Affected by a Discharge.—(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, * * * or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

"Sec. 63. Debts Which may be Proved.—(a) Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account, or upon a contract express or implied. * * *"

The case of Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, was a case arising in the state of Illinois to recover for the conversion of stocks which the defendants had in their possession as

security for the amount due them from plaintiff and which they had wrongfully and fraudulently sold and converted to their own use. It was held by the Supreme Court of the United States, reversing the state courts of Illinois, that plaintiff might have waived the tort and proved his claim in the bankruptcy court, and that the claim was one "founded upon an open account or upon a contract express or implied," within the meaning of said section 63, and was therefore a provable debt, within the meaning of said section 17. It was further held that it did not fall within the exception contained in subdivision 4 of said section 17, and that a discharge in bankruptcy would relieve the bankrupt from such claim. That case is analogous to this, and would be conclusive in favor of appellant, except for the amendment of the statute to which reference will now be made. See, also, Tindle v. Birkett, 183 N. Y. 267, 76 N. E. 25.

Prior to 1903 subdivision 2 of section 17 was as follows:

"(2) Are judgments in actions for fraud or obtaining property by false pretenses or false representations or for willful or malicious injuries to the person or property of another."

It was in reference to the statute in that form that the cases of Crawford v. Burke and Tindle v. Birkett, supra, were decided, and as the claims under consideration in those cases had not been reduced to judgments no question could arise that such claims were covered by the phraseology of the statute as it was before 1903. But in the latter year subdivision 2 of section 17 was entirely changed in its scope and purport and made to read as follows:

"(2) Are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for criminal conversation."

The question here presented is whether plaintiff's claim is one for a "willful and malicious injury to the * * * property" of himself. That such claim is still a provable debt must be conceded under the authority of Crawford v. Burke. But, although provable, it is not immune as against a discharge in bankruptcy, provided it falls within one of the exceptions enumerated in subdivision 2 of section 17. In order to constitute such an exception the claim must constitute both a willful and malicious injury to plaintiff's property.

It is doubtless true that in the popular and ordinary sense the term "malice" implies the idea of hatred, spite, or ill will; but in legal parlance the term is frequently used in a different sense. There have been many and various definitions or descriptions of the term "malice," depending on the connection in which the word is used, the object sought to be obtained, and the consequences dependent on its use. In Words and Phrases Judicially Defined, vol. 5, p. 4298 et seq., it is said:

"Malice in common acceptation means ill will against a person; but in its legal sense it means a wrongful act done intentionally without just cause or excuse."

And again:

"The term 'malice' is variously used, according to the nature of the litigation in which it is sought to be established. In legal parlance, malice may

be actually implied whenever there is a deliberate intention to do a grievous wrong without legal justification or excuse. In civil controversies, the very essence of malice is a disposition or willingness to do a wrongful act greatly injurious to another."　.

In Cyc. vol. 25, pp. 1666, 1667, the authorities are collated bearing on the definition or description of this word, and it is said:

"In its legal sense, however, the term has been said to denote a wrongful act done intentionally without just cause or excuse; and this definition has been substantially adopted in a great many cases, with immaterial alteration of phraseology, as follows: The intentional doing of a wrongful act toward another without legal justification or excuse; the willful doing of an injurious act without lawful excuse; the doing a wrongful act intentionally without just cause or excuse."

The Century Dictionary, in defining the word, says:

"In law, a design or intention of doing mischief to another; the evil intention (either actual or implied) with which one deliberately and without justification or excuse does a wrongful act which is injurious to others. * * * Constructive malice, implied malice, imputed malice, malice in law, that which, irrespective of actual intent to injure, is attributed by the law to an injurious act intentionally done, without proper motive, as distinguished from actual malice, either proved or presumed."

In Collier on Bankruptcy (6th Ed.) p. 225, it is said of the statute under consideration:

"The word 'willful,' as here used, means nothing more than intentional, while the malice here intended is nothing more than that disregard of duty which is involved in the intentional doing of a willful act to the injury of another."

In Davis v. Standard National Bank, 50 App. Div. 210, 213, 63 N. Y. Supp. 764, it is said:　.

"But while, to establish malice for certain purposes, such a willful intent is necessary, that intent is not involved in the legal definition of the term 'malice.' Whenever the wrongful act is done intentionally, without just cause or excuse, a legal inference of malice arises therefrom. Bromage v. Prosser, 4 B. & C. 247, 255; Commonwealth v. Snelling, 15 Pick. (Mass.) 321, 340."

In Commonwealth v. York, 50 Mass. 104, 43 Am. Dec. 373, it is said:

"Malice, although in its proper sense it means hatred, ill will, or hostility to another, yet in its legal sense has a very different meaning, and characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; the willful doing of an injurious act without lawful excuse."

Authorities might be multiplied to show that it is not essential in all cases that ill will should exist in order to establish malice. But we have an interpretation by the United States Supreme Court of the identical words under consideration. In Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754, Judge Peckham, in considering the meaning of these words in the statute as it was prior to the amendment of 1903, said:

"In United States v. Reed (C. C.) 86 Fed. 308, it was held that malice consisted in the willful doing of an act which the person doing it knows is liable to injure another regardless of the consequences; and a malignant spirit or a specific intention to hurt a particular person is not an essential element. Upon that principle we think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself,

and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception. It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injuring or destroying property or for malicious mischief, where mere intentional injury, without special malice towards the individual, has been held by some courts not to be sufficient. Com. v. Williams, 110 Mass. 401. We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged."

There are doubtless many torts against which a discharge in bankruptcy is effective. The act is liberally construed in favor of an honest and well-meaning debtor. A conversion of property may exist entirely consistent with the utmost good faith on the part of the converting debtor. In respect to such torts there is no injustice or inequity in extending the provisions of the bankrupt act applicable thereto in accordance with the beneficent and humane policy of such act. But a conversion which shows a design or willingness to inflict a wrong upon another, or the reckless disregard of the rights of another, rests on a different basis. In Matter of Bullis, 68 App. Div. 518, 73 N. Y. Supp. 1047, cited with approval in Crawford v. Burke, supra, it is said:

"The statute is to be construed liberally, to discharge the insolvent from the burden of the obligations which he is unable to pay in full; but that liberality may not be extended to an insolvent to release him from a judgment which was recovered against him by reason of his 'positive fraud' and 'intentional wrong,' whatever may have been the form of the action in which the recovery was had. The primary purpose of the statute is to enable an insolvent debtor to be relieved from the burden of his obligations. One exception that has pervaded all of our bankrupt laws is that, where the insolvent has become liable for the payment of a debt which had its origin in his own positive dishonesty, the way is not open for his discharge from that liability."

While the complaint herein does not show the circumstances of the alleged conversion, and therefore the willful or malicious character of the defendant's acts cannot be determined therefrom, yet the affidavit used on the motion supplements those allegations, and shows that almost immediately after the defendants came into possession of this property they began to sell it to different parties, and continued to make such sales from time to time without plaintiff's knowledge after they had realized more than sufficient to pay the amount due them from plaintiff, and applied the avails to their own purposes. Resort may be had to the entire record to determine the character of the wrongful acts. Matter of Bullis, 68 App. Div. 518, 73 N. Y. Supp. 1047; Colwell v. Tinker, 169 N. Y. 531, 537, 62 N. E. 668, 58 L. R. A. 765, 98 Am. St. Rep. 587; Palmer v. Hussey, 87 N. Y. 303. No explanation or justification of the alleged wrongful acts is proffered. The defendants, in utter disregard of the rights of plaintiff, knowing they were injuring him, and willing to do so in order to subserve their own wrongful purposes, converted his property. In short, the acts disclosed constituted larceny. There is neither reason nor justice in extending to such acts the protection of the bankruptcy act, unless we are clearly required to do so by its provisions. One of the purposes

which Congress probably had in view in making the amendment of 1903 referred to was to except from the benefits of the act just such conduct as is here disclosed on the part of the defendants.

Appellant cites with much confidence the case of Matter of Floyd Crawford & Co., 15 Am. Bankr. R. 277. That case is essentially different on the facts. There was no moral turpitude involved or intent to inflict wrong on another. The case recognizes the distinction, and by implication lends support to plaintiff's position here. The commissioner in his report said:

"There is no moral turpitude or intentional wrong disclosed here by the evidence, as, for instance, embezzlement or misappropriation, which must exist to bring the 'liability' within the exception of debts which are released by a discharge in bankruptcy. Implied fraud or fraud in law, which may exist without the implication of bad faith or immorality, is not sufficient. * * * To recapitulate, the evidence having failed to disclose * * * any willful and malicious injury to the plaintiff or her property, * * * I conclude that this debt is not a liability embraced within the foregoing exceptions."

While the question is novel, and not free from doubt, I am of the opinion that for the reasons heretofore stated the order should be affirmed, with $10 costs and disbursements. All concur.