## In re MUNRO.

(District Court, N. D. New York. April 19, 1912.)

**1.** FORCIBLE ENTRY AND DETAINER (§ 5*)—"FORCIBLE DETAINER"—NATURE OF.
A "forcible detainer" implies the use of force or threats of violence by words or conduct inspiring fear of bodily harm or terror to some degree, and to make out a forcible detainer the guilty person must be wrongfully on the premises or wrongfully in temporary possession thereof.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. §§ 23–28; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 3, pp. 2872, 2873.]

**2.** BANKRUPTCY (§ 424*)—DEBTS NOT AFFECTED BY DISCHARGE—"WILLFUL" —"MALICE."
Where a lessee assigned his lease to his wife with the consent of the landlord, and the landlord subsequently instituted summary proceedings to dispossess the lessee without making the wife a party, and under the judgment of dispossession the landlord, through agents, took possession of the premises and removed the wife's property and forcibly removed the wife, a judgment for the wife for damages for the acts of the landlord was based on "willful" and "malicious" acts, within Bankruptcy Act July 1, 1898, c. 541, § 17, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), providing that a discharge in bankruptcy does not release the bankrupt from judgments for willful and malicious injuries to the person or property of another; the word "willful" meaning nothing more than "intentional," and the word "malice" in its legal sense meaning a wrongful act done intentionally, without just cause or excuse (citing 5 Words & Phrases, pp. 4298–4312).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787, 818; Dec. Dig. § 424.*]

**3.** BANKRUPTCY (§ 217*)—RESTRAINING PROCEEDINGS IN STATE COURTS.
Where a holder of a judgment against a bankrupt not affected by a discharge institutes proceedings supplementary to execution against the bankrupt, the bankruptcy court will not restrain such proceedings ex-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cept in so far as they will interfere with the due administration of the estate of the bankrupt under the bankruptcy law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 323, 330, 340; Dec. Dig. § 217.*

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank of Providence, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

4. BANKRUPTCY (§ 212*)—ACTIONS—JURISDICTION.

Where property claimed by one as his own had been replevied from a bankrupt and not reclaimed or retaken, the referee in bankruptcy could properly permit the question of title to be settled in the action of replevin; but where the property claimed came into the possession of the trustee in bankruptcy, the title might be determined in the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. § 212.*]

In the matter of John C. Munro, bankrupt. Application on return of order to show cause for an order restraining Kittie Fults from the further prosecution of proceedings supplementary to execution pending before Hon. William M. Ross, County Judge of Onondaga County, New York. Granted in part.

Thomas Woods, for bankrupt.

Harry H. Stone, for creditor.

RAY, District Judge. Prior to the institution of these proceedings in bankruptcy, Kittie Fults obtained a judgment in the Supreme Court of the state of New York against said John C. Munro for damages for a wrongful entry on and a forcible detainer of certain real estate owned by Munro and leased by him to Fults, the husband of plaintiff, who assigned the lease to the said Kittie Fults with the knowledge and assent of Munro. The damages, $75, were trebled under the statute, and the judgment including costs is for the sum of $717.73. This debt was duly scheduled by the bankrupt and is in the form of a judgment entered in the clerk's office of Onondaga county, N. Y., on the 1st day of November, 1911. On the 28th day of February, 1912, execution having been returned unsatisfied, Judge Ross granted an order for the examination of the bankrupt in supplementary proceedings instituted pursuant to the statute on such prior proceedings.

The contention of the creditor is that such judgment is for damages for a willful and malicious injury to her person or property, while the contention of the bankrupt is that said judgment is not for such a cause of action or one founded on such a claim, and that it is therefore dischargeable in bankruptcy, and that all proceedings founded thereon should be stayed under section 11 of the bankruptcy act.

The sole question is, therefore: Was the wrongful entry on this real estate and the forcible detainer thereof or detainer of Mrs. Fults therefrom a willful and malicious injury to the person or to the property of said Kittie Fults within the meaning of section 17 of the bankruptcy act?

[1] A judgment for damages for a forcible detainer necessarily implies the use of force or threats of violence by words or conduct inspiring fear of bodily harm or terror to some degree and a wrongful entry on the lands, even though not accompanied by threats, etc. In short, a forcible entry is distinct from a forcible detainer; but to make out a forcible detainer the guilty party must be wrongfully on the premises or wrongfully in temporary possession thereof. This is illustrated by the opinion of the Court of Appeals in this very case, given by Vann, J., and reported in 202 N. Y. 34, 95 N. E. 23. There are numerous cases to the same effect, many of which will be found cited in 19 Cyc. 1112, 1123, etc. It is there said:

"A forcible entry being generally an entry upon another's possession by force or violence, and a forcible detainer being generally a wrongful or unlawful entry, although without force, which has been followed by a detention with force and a strong hand"—citing Boyle v. Boyle, 121 Mass. 85; Foster v. Kensey, 36 Vt. 199, 84 Am. Dec. 676; Hoffman v. Harrington, 22 Mich. 52; Winterfield v. Stauss, 24 Wis. 394; Mitchell v. Shanley, 15 Gray (Mass.) 319.

"A forcible detainer is the offense of violently keeping possession of lands and tenements with menaces, force and arms, and without the authority of law." Black's Law Dict.; and see 4 Black. Comm. 148; 4 Stephen, Comm. 280.

The same circumstances of force, violence, or terror are essential to a forcible detainer as to a forcible entry.

"There may be a forcible detainer although the entry is peaceable, but whoever retains a wrongful possession by keeping an unusual number of people or unusual weapons or threatening to do some bodily hurt to the former possessor if he dares to return is guilty of a forcible detainer, although no attempt is made to re-enter." 19 Cyc. 1116, and cases there cited.

See, also, Becher v. City of N. Y., 102 App. Div. 269, 271, 92 N. Y. Supp. 460.

[2] The facts in this case disclose that Mrs. Fults was in possession of the farm owned by Munro under a lease to her husband and assigned by him to her with the knowledge and consent of Munro, who had recognized her as tenant; that summary proceedings to dispossess were commenced against Mr. Fults, to which Mrs. Fults was not made a party, before a justice of the peace, and resulted in the granting by the justice of a warrant to dispossess. Armed with this warrant, an officer and Munro went to the premises, in the absence of the husband, the sole party defendant in the proceedings, and informed Mrs. Fults they had come to put her out and were going to do so. Mrs. Fults denied their right to remove her or put her out of possession and went to Syracuse to consult an attorney. During her absence, Munro and the officer proceeded to take possession of the farm and stock thereon and removed all the household property and belongings of Mrs. Fults from the home and premises and to and across the highway to other premises, where they were left in the limits of the public highway; the horses being tied to the fence. One Lockwood, an assistant of the officer, was put in charge of the premises by the defendant Munro, and Lockwood, armed with a gun, walked up and down in front of Mrs. Fults' things during the night and ordered her and her husband to keep off that side of the road,

the side the house and premises were on. Mrs. Fults remained with her things in the highway during the night, and Lockwood walked up and down, and on two or three occasions fired off the gun. Here, as the Court of Appeals held in reversing a nonsuit on the first trial, there was sufficient force and violence to constitute a forcible detainer. On the second trial, under substantially the same evidence, the jury found a forcible detainer and damages for such acts constituting it in the sum of $75.

The right to be and remain on the farm and in the house and to keep her horses in the barn and her interest in the growing crops was a right of property. Deprived of it wrongfully, Mrs. Fults was necessarily injured in her property. She was deprived of her property. When she returned from Syracuse and found Munro and the officer in possession, she entered on the premises to get some puppies. She was told she could not have them and was then forcibly put off the premises by the officer, who took her by the arm and put her off. Here was injury to her person. This woman was not compelled to enter on a physical struggle for the possession, and any unlawful laying on of hands by the officer was an injury to her person. It was not necessary that she be beaten, bruised, or maimed. She was deprived of her lawful shelter, and this was an injury to her person. Only a barbarous court or judge would say that a woman is not injured in her person when unlawfully taken hold of and led from her home, where she has the right to be, to the opposite side of the highway, and left in the public highway with her household goods and personal belongings also unlawfully removed at the same time, and kept out of her home by threats, menacing conduct, and the firing of a gun, all of which acts naturally inspire fear. All this is calculated to shock the nerves and affect and injure the physical condition. In this case there was an actual assault and battery perpetrated in order to make effectual the forcible detainer of which it formed a part. Wood v. Phillips, 43 N. Y. 152, 156–158. Was this a willful and malicious injury? It is the settled law of the case as between the bankrupt and Mrs. Fults that there was no authority or justification whatever for the removal of Mrs. Fults from the premises or her detainer therefrom. The removal proceedings were invalid, and so held on appeal. So far as Mrs. Fults was concerned, she was not even a party, and she owned and was occupying under the lease with the knowledge and approval of Munro. After the unlawful entry was consummated, in the absence of Mrs. Fults, the removal of property took place, and while this was going on, Mrs. Fults was assaulted and led from the premises. After possession had been delivered to Munro, one Lockwood was left on the premises by direction of Munro. He was an assistant of the officer in the removal, but made the agent of Munro thereafter and acted as such. After possession was delivered to Munro, the functions and authority of the officer as such and under the warrant of dispossession ceased. Lockwood thereafter was the mere agent of Munro. Munro was therefore responsible for all that took place during the night, and, as the officer and Lockwood were there without any process whatever against Mrs. Fults, neither

of them had any warrant or justification for laying hands on her person while her property was being removed. As the Court of Appeals justly said, Munro was responsible for all the force used in detaining Mrs. Fults from the premises or the premises from her. That these unlawful acts were willful is beyond question. The injury was willful. Was it a malicious injury within the meaning of section 17 of the bankruptcy act?

In the common acceptation of the word "malice," it implies hatred, spite, or ill will; but the words "malicious injuries to the person or property of another" were not used in this sense by Congress in enacting section 17 of the bankrupt act. In Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505. 48 L. Ed. 754, the syllabus is as follows:

"The personal and exclusive rights of a husband with regard to the person of his wife are interfered with and invaded by criminal conversation with her, and such an act constitutes an assault even when the wife consents to the act, as such consent cannot affect the rights of the husband against the wrongdoer; and the assault constitutes an injury to the husband's rights and property which is both malicious and willful within the meaning of subdivision 2 of section 17 of the Bankruptcy Act of 1898, and a judgment obtained by the husband on such a cause of action is not released by the judgment debtor's discharge in bankruptcy."

Mr. Justice Peckham, in delivering the opinion of the court (Mr. Justice Brown, Mr. Justice White, and Mr. Justice Holmes, dissenting), said amongst other things:

"The averment in the petition that the judgment was not recovered for a willful and malicious injury to the person or property of the plaintiff in the action is a mere conclusion of law and not an averment of fact.

"If the judgment in question in this proceeding be one which was recovered in an action for willful and malicious injuries to the person or property of another, it was not released by the bankrupt's discharge; otherwise it was.

"We are of opinion that it was not released. We think the authorities show the husband has certain personal and exclusive rights with regard to the person of his wife which are interfered with and invaded by criminal conversation with her; that such an act on the part of another man constitutes an assault even when, as is almost universally the case as proved, the wife in fact consents to the act, because the wife is in law incapable of giving any consent to affect the husband's rights as against the wrongdoer; and that an assault of this nature may properly be described as an injury to the personal rights and property of the husband, which is both malicious and willful. A judgment upon such a cause of action is not released by the defendant's discharge in bankruptcy. * * *

"We think it is made clear, by these references to a few of the many cases on this subject, that the cause of action by the husband is based upon the idea that the act of the defendant is in violation of the marital rights of the husband in the person of his wife, to the exclusion of all others, and so the act of the defendant is an injury to the person and also to the property rights of the husband.

"We think such an act is also a willful and malicious injury to the person or property of the husband, within the meaning of the exception in the statute.

"There may be cases where the act has been performed without any particular malice towards the husband, but we are of opinion that, within the meaning of the exception, it is not necessary that there should be this particular, and, so to speak, personal malevolence toward the husband, but that the act itself necessarily implies that degree of malice which is sufficient to bring the case within the exception stated in the statute. The act is willful, of course, in the sense that it is intentional and voluntary, and we think that it is also malicious within the meaning of the statute.

"In order to come within that meaning as a judgment for a willful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained.

"In Bromage v. Prosser, 4 Barn. & Cres. 247, which was an action of slander, Mr. Justice Bayley, among other things, said: 'Malice, in common acceptation, means ill will against a person, but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse. If I give a perfect stranger a blow likely to produce death, I do it *of malice*, because I do it *intentionally* and without just cause or excuse. If I maim cattle, without knowing whose they are, if I poison the fishery, without knowing the owner, I do it *of malice*, because it is a wrongful act, and done intentionally. If I am arraigned of felony, and willfully stand mute, I am said to do it *of malice*, because it is intentional and without just cause or excuse. And if I traduce a man, whether I know him or not and whether I intend to do him an injury or not, I apprehend the law considers it as done of malice, because it is wrongful and intentional. It equally works an injury, whether I meant to produce an injury or not. * * *'

"We cite the case as a good definition of the legal meaning of the word 'malice.' The law will, as we think, imply that degree of malice in an act of the nature under consideration, which is sufficient to bring it within the exception mentioned. * * *

"It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injuring or destroying property, or for malicious mischief, where mere intentional injury without special malice towards the individual has been held by some courts not to be sufficient. Commonwealth v. Williams, 110 Mass. 401.

"We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged."

It seems clear from the language of the court in this case that injury to person or property in the legal sense is a malicious injury in the absence of hatred, spite, or ill will, provided the act was intentional, wrongful, and without just cause or excuse. It seems to me that the judgment itself in this case under the pleadings establishes that the acts of Munro, constituting the forcible detainer, were unlawful, wrongful, and without just cause or excuse. The record, made a part of the papers here, establishes this beyond all question. Neither Munro nor Lockwood, his agent, was armed with any process whatever against Mrs. Fults, the tenant in possession. The warrant of dispossession issued against the husband, William Fults, had no validity as to him as was subsequently held on appeal, and clearly none against Mrs. Fults at any time. The acts of Munro and Lockwood, his agent, were therefore wrongful and committed without any just cause or excuse. The acts of Lockwood in denying to Mrs. Fults the right to take her puppies, in taking her by the arm and leading her from the premises and in marching up and down during the night armed with a gun, which was fired at intervals and without necessity, indicate moral turpitude or wrong. This view is sustained by the language of the Supreme Court of the United States in Iron Mountain, etc., v. Johnson, 119 U. S. 608, 611, 7 Sup. Ct. 339, 340, 30 L. Ed. 504, where that court, in reference to forcible entry and detainer, said:

"The party so using force and acquiring possession may have the superior title or may have the better right to the present possession, but the policy of

the law in this class of cases is to prevent disturbances of the public peace, to forbid any person righting himself in a case of that kind by his own hand and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are in statu quo, or in the same position as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance. This is the philosophy which lies at the foundation of all these actions of forcible entry and detainer, which are declared not to have relation to the condition of the title, or to the absolute right of possession, but to compelling the party out of possession, who desires to recover it of a person in the peaceable possession, to respect and resort to the law alone to obtain what he claims."

In Kavanaugh v. McIntyre, 128 App. Div. 722, 726, 727, 112 N. Y. Supp. 987, 990, 991, the court quotes the definition of malice in law as found in many authorities, viz.: Words & Phrases Judicially Defined, vol. 5, p. 4298; Cyc. vol. 25, pp. 1666, 1667; Century Dictionary; Collier on Bankruptcy (6th Ed.) 225; Davis v. Standard, etc., 50 App. Div. 210, 213, 63 N. Y. Supp. 764; Commonwealth v. York, 9 Metc. (Mass.) 104, 43 Am. Dec. 373; and United States v. Reed (C. C.) 86 Fed. 308. All these definitions are to the effect above stated, and the court held that personal animosity, hatred, spite, or ill will are not necessary elements in showing that injury to person or property is malicious under the section of the bankruptcy act.

In Collier on Bankruptcy (8th Ed.) 321, it is said of these words:

"The word 'willful' as here used means nothing more than intentional, while the 'malice' here intended is nothing more than that disregard of duty, which is involved in the intentional doing of a willful act to the injury of another."

In McCristal v. Clisbee, 16 Am. Bankr. Rep. 838, 190 Mass. 120, 76 N. E. 511, 3 L. R. A. (N. S.) 702, 5 Ann. Cas. 769, it is said with regard to the words of the act now under consideration:

"The defendant contends that the word 'malicious' is not used here in its ordinary legal sense, and that it means a wicked, malevolent desire to do another an injury for the sake of the suffering that it will cause him. Such a feeling is commonly called express malice, while the malice here intended is nothing more than that disregard of duty which is involved in the intentional doing of a willful act to the injury of another. Each of the wrongs charged in the different counts of the declaration is malicious in law."

In Peters v. United States ex rel. Kelly, 24 Am. Bankr. Rep. 206, 177 Fed. 885, 101 C. C. A. 99, the Circuit Court of Appeals, Seventh Circuit, reversing United States ex rel. Kelley v. Peters (C. C.) 22 Am. Bankr. Rep. 177, 166 Fed. 613, held:

"The term 'willful and malicious injury,' as used in section 17 (2) of the Bankruptcy Act of 1898, excepting liabilities therefor from a discharge in bankruptcy, does not necessarily involve hatred or ill will as a state of mind, but arises from a wrongful act, done intentionally without just cause or excuse, and special malice is not necessary to sustain a judgment for such injury to person or property."

I think a case is within the exception when the act producing injury to person or property was wrongful, intentional, and done without just cause or excuse; that is, a wrongful act was done under circumstances from which with the nature of the act the law implies malice. I cannot construe the decision of the Supreme Court of the

United States in Tinker v. Colwell, supra, in any other way. In construing statutes making it a crime to do "malicious" injury to property, the courts have quite generally held that the element of spite, hatred, or ill will was involved. Some courts have gone to the extent of holding that statutes making it a crime to "maliciously" maim or injure animals involve the idea of spite, hatred, or ill will towards the owner of such animals. It seems to me, however, that a willful injury to animals done with a desire to inflict pain and suffering, or witness the contortions of such animal, may often be a "malicious injury to property" under a statute when the owner is absolutely unknown to the wrongdoer. I think the definitions of "malicious" found in the books in cases where such statutes were under consideration are not of controlling weight in construing the bankruptcy act. A careful reading of the cases found in 5 Words & Phrases Judicially Defined, pp. 4298–4312, will demonstrate that the decisions of the courts are far from uniform and incapable of reconciliation; but, after all, the great weight of authority is that:

"Malice in its common acceptation means ill will against a person; but in its legal sense it means a wrongful act done intentionally without just cause or excuse."

[3] I am therefore constrained to hold that the judgment for damages for forcible detainer rendered against the bankrupt, John C. Munro, is not a liability from which a discharge in bankruptcy will be a release, and that Mrs. Fults cannot be properly enjoined from further prosecuting the pending supplementary proceedings except in so far as to prevent the use of such proceedings to interfere with the due administration of the estate of the bankrupt under the bankruptcy law.

[4] In so far as the action of replevin is concerned, sufficient facts are not disclosed to enable this court to make a proper order. If property claimed by Mrs. Fults as her own had been actually replevied from Munro and not reclaimed or retaken, it would be proper for the referee to permit the question of title to be settled in the action. If, on the other hand, the property in question has come into the possession of the trustee in bankruptcy so as to be in the custody of the court in bankruptcy, the title may be there determined. The action may relate to the mere temporary possession of the property. It may be that Munro obtained the property from Mrs. Fults by false and fraudulent representations, and that she is seeking to recover same, or the value, for that reason. If so, a judgment for the value if delivery cannot be had would not be released by a discharge in bankruptcy. Within 10 days the bankrupt may file additional affidavits if he desires to press the motion for a stay of the replevin action.

So ordered.