RAWSON L. WOOD and Others, Respondents, *v.* JOSIAH M. FISKE and Others, Appellants, Impleaded with CLIFFORD M. WASHBURN, Defendant.

First Department, December 1, 1916.

Bankruptcy — conversion of stock by stockbrokers — debt not discharged in bankruptcy — evidence — value of stocks — appeal from direction of verdict for plaintiff — effect of failure of defendant to take exception.

Where stockbrokers, having possession of stocks purchased and paid for in full by a customer who had instructed them to have the stocks transferred to his name on the books of the corporation, failed to obey the direction and converted the same to their own use by hypothecating them within a few hours before their bankruptcy so that the stocks were never delivered to the customer, they were guilty of a willful and malicious injury to the property of another within the meaning of the Bankruptcy Act and their liability therefor is not discharged in bankruptcy.

*It seems,* that the value paid for such stock in the open market a day or two before the conversion is some evidence of value.

Where the court by directing a verdict for the plaintiff determined as a matter of law that the defenses of the defendant were insufficient and the defendant took no exception, the defenses will not be considered on appeal.

Where defendant does not ask to go to the jury upon any question and takes no exception to the direction for a verdict for the plaintiff, there is an acquiescence in the court's decision that there was no question of fact for the jury and on appeal the correctness of the direction of the verdict is not before the court.

Although the Appellate Division, since the amendment of section 1346 of the Code of Civil Procedure, may consider questions of fact as well as of law on an appeal from a judgment entered upon a directed verdict, it will not review the evidence to see if the court was right in directing the verdict in the absence of an exception in the court below.

APPEAL by the defendants, Josiah M. Fiske and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 24th day of June, 1915, upon the verdict of a jury rendered by direction of the court.

*Louis H. Moos,* for the appellants.

*Charles J. McDermott,* for the respondents.

DAVIS, J.:

This action is brought to recover $27,275 damages claimed by the plaintiff respondents by reason of the conversion by defendants of 200 shares of Northern Pacific stock. The court directed a verdict for the plaintiffs for the sum of $14,388.53, which is the balance claimed to be due after deducting from the whole claim the amount received by plaintiffs from the receiver in bankruptcy. The defendants plead a discharge in bankruptcy under which they claim immunity against the demand of the plaintiffs. The plaintiffs assert that their claim is not discharged, because it is based on a willful and malicious injury to property and is thus one of the exceptions referred to in section 17 of the Bankruptcy Act. That section is as follows:

"Sec. 17. Debts not affected by a discharge. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another, * * * or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

"Sec. 63. Debts which may be proved. Debts of the bankrupt may be proved and allowed against his estate, which are * * * (4) founded upon an open account, or upon a contract express or implied * * *."

The defendants were brokers and bankers. On January 14, 1910, upon the plaintiffs' order they purchased for the plaintiffs 100 shares of Northern Pacific stock and received the certificates therefor. They notified the plaintiffs of this purchase at 137½ per share, and on the same day plaintiffs gave defend-

ants their check for $13,762.53, which was received by defendants as payment for said 100 shares. This appears from admissions in the answer, by letters of defendants to plaintiffs acknowledging receipt of the check, and from the testimony of Sherwood, a member of defendants' firm.

The plaintiffs also showed that specific instructions had been given to defendants to transfer this stock to the name of the plaintiffs upon the books of the corporation, and that this instruction was well understood by the defendants and by them accepted. There was a similar transaction as to a second 100 shares of Northern Pacific on January 17, 1910. The order to buy the stock was given and the certificate came into defendants' possession and was paid for by plaintiffs' check on January 17, 1910.

Instead of obeying plaintiffs' instructions to cause the transfer of these 200 shares to plaintiffs' name, the defendants, after plaintiffs had paid for the stock, loaned 100 shares of said stock to M. C. Bouvier & Co., to whom they delivered the certificates and hypothecated the other 100 shares for their own use to the National City Bank and thereafter to the Mechanics and Metals Bank. None of this stock has ever been delivered to the plaintiffs.

It was clearly shown through Mr. Sherwood, a member of defendants' firm, that the stock of the plaintiffs had been used by defendants to secure their own loans and contrary to express instructions to cause the transfer to the name of plaintiffs.

The defendants loaned 100 shares of plaintiffs' stock to Bouvier & Co. on January 18, 1910, and hypothecated the other 100 shares to the Mechanics and Metals Bank between ten A. M. and twelve-thirty on January 19, 1910. About twelve-forty A. M. on January 19, 1910, the defendants announced their failure. The delivery to Bouvier & Co. was made within about twenty-four hours of the failure and to the Mechanics and Metals Bank within two hours of the failure.

At the time of the failure, Bouvier & Co. and the Mechanics and Metals Bank still had possession of plaintiffs' stock.

It would thus appear that the defendants misappropriated plaintiffs' stock in an effort to help themselves over a financial crisis; that being in possession of plaintiffs' property and fully

conscious of their duty to deliver it to the plaintiffs, they violated that duty by deliberately appropriating it to their own use.

It was a willful act because it was intentional, and it was malicious because it was an injury to the plaintiffs' property knowingly inflicted without just cause or excuse. What constitutes a willful and malicious injury to property within the provisions of the Bankruptcy Act is well pointed out in the case of *Kavanaugh* v. *McIntyre* (128 App. Div. 722), where many authorities are cited, and among them the case of *Tinker* v. *Colwell* (193 U. S. 473), in which Mr. Justice PECKHAM in the course of his opinion says: " * * * We think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception."

From this evidence it is clear that the defendants inflicted a willful and malicious injury upon plaintiffs' property by the misappropriation of their stock. It follows, therefore, that the defense of a discharge in bankruptcy interposed by the defendants is not made out. An order discharging the defendants in bankruptcy was put in evidence, and the trial court necessarily held as a matter of law in directing a verdict that the three conversions of the stock by the defendants constituted a willful and malicious injury to plaintiffs' property under section 17, subdivision 2, of the Bankruptcy Act, and to this direction no objection was made or exception taken.

The appellants claim that the trial justice refused to allow the defendants to explain, excuse or justify their action, to show for instance that the misuse of the plaintiffs' property was the result of excusable error, and not intentional. The record does not show such an attitude on the part of the trial justice. The defendants' counsel asked many questions which he doubtless thought would bear upon this issue, but they are obviously incompetent and immaterial and we think were properly excluded.

The defendants also claim that plaintiffs' action is not in conversion, but for money had and received, and that, therefore, it

was a contract obligation from which defendants were discharged by the order in bankruptcy. The complaint shows the contrary. It sets forth a good cause of action for the conversion of 200 shares of stock. It alleges expressly that by reason of defendants' acts, or wrongdoing and conversion of stock, the plaintiffs have been damaged in the sum of $27,275 and then demands judgment for those damages. And this attitude of the plaintiffs was consistently maintained before the referee in bankruptcy where the plaintiffs appeared and proved their title to the stock in question and the fact that it had been converted and received from the receiver in bankruptcy $16,282.30 on account of their claim.

Defendants also claim that the plaintiffs offered no proper evidence of damage; but this is not strictly true. The price paid for the stock in open market one or two days before the conversion would be some evidence of value. At any rate, defendants made no objection at the trial to this measure of damages, nor did they object to the direction of a verdict for that amount.

The appellants pleaded other affirmative defenses to plaintiffs' cause of action, all of which were disposed of by the court when it directed a verdict for the plaintiffs. By this direction it decided as matter of law that these defenses were insufficient, and as no exception was taken by defendants to the court's disposition of them, they are not now to be considered on this appeal.

At the close of the case the defendants said they had no motions to make, and they did not ask to go to the jury upon any question of fact in the case and took no exceptions to the direction of a verdict. This amounted to an acquiescence in the court's decision that there was no question of fact for the jury to decide. Therefore, the correctness of the court's decision to direct a verdict is not before us. In the case of *Curtis* v. *W. & W. M. Co.* (141 N. Y. 511, 513) the court say: "The sole contention of the plaintiffs' counsel upon the argument was that a verdict ought not to have been directed, and that the case should have been submitted to the jury. There is no exception which presents that question for our consideration. The plaintiff acquiesced in the direction of a verdict."

Although the amendment of 1914 to section 1346 of the Code of Civil Procedure allows this court to consider questions of fact as well as of law on an appeal from a judgment entered upon a directed verdict, in the absence of an exception to the court's direction of a verdict this court will not review the evidence to see if the court decided right in directing a verdict. Therefore, the exceptions to be considered here are those taken by the defendants during the trial, and relating to the rejection of evidence claimed by the defendants to show absence of intent and presence of good faith. These exceptions have been disposed of by us as being without merit.

The judgment is affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Judgment affirmed, with costs.