PETERS, Sheriff, v. UNITED STATES ex rel. KELLEY.

(Circuit Court of Appeals, Seventh Circuit. January 28, 1910.)

No. 1,584.

1. HABEAS CORPUS (§ 30*)—SCOPE OF WRIT—ORIGINAL CONTROVERSY.

Where relator was imprisoned under a body execution on a judgment in an action for trespass vi et armis and assault and battery, a writ of habeas corpus was unavailable to bring the original parties into court to relitigate the original controversy, or to review alleged errors of law or fact in the original litigation.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

2. BANKRUPTCY (§ 424*)—DISCHARGE—LIABILITY.

The character of the "liability," as that word is used in Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]) § 17, subd. 2, as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1909, p. 1310]), specifying certain debts of a bankrupt not affected by a discharge, is not changed by the fact that the liability has been reduced to judgment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 424.*]

3. BANKRUPTCY (§ 424*)—DISCHARGE—"WILLFUL AND MALICIOUS INJURY."

The term "willful and malicious injury," as used in the bankruptcy act, providing that a discharge shall not relieve the bankrupt from liability therefor, does not necessarily involve hatred or ill will as a state of mind, but arises from a wrongful act done intentionally without just cause or excuse; it being sufficient, to constitute a willful and malicious injury to person or property, that the wrongful act is intentionally done without just cause or excuse, special malice not being required.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 424.*

For other definitions, see Words and Phrases, vol. 8, pp. 7477–7480; vol. 5, p. 4308.]

4. BANKRUPTCY (§ 424*)—WILLFUL AND MALICIOUS INJURY.

Where a judgment against a bankrupt was rendered on a declaration containing a count for trespass vi et armis, alleging that she overstepped her authority as a school teacher in administering corporal punishment to the plaintiff, it would be assumed, under the full faith and credit clause of the federal Constitution, that the verdict rendered in the state court on which the judgment was based was sustained by sufficient evidence, and was rendered under proper instructions, and hence that the

------

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgment was for a willful and malicious injury from which a discharge in bankruptcy would not relieve, under the rule that a judgment for damages under a count for trespass vi et armis cannot lawfully be rendered except on proof of a willful and malicious injury.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 424.*]

Grosscup, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Illinois.

Habeas corpus by the United States, on the relation of Annie Kelley, against J. M. Peters, Sheriff of Champaign County, Illinois. From an order discharging petitioner from custody (166 Fed. 613), respondent appeals. Reversed.

After relatrix was adjudged a bankrupt by the court below, and before she was discharged, appellant as sheriff took her into custody under an execution against her body. The execution was issued by virtue of a judgment entered against her in favor of Michael Burke by the circuit court of Champaign county, Ill., before her voluntary petition in bankruptcy was filed. On her petition for a writ of habeas corpus in the District Court, she was temporarily released from custody, pending her application for a discharge in bankruptcy. After her discharge in bankruptcy was granted, the District Court considered her petition for the writ, the sheriff's return, and certain testimony, and thereupon entered the order appealed from, finally discharging relatrix from the custody of the sheriff.

Section 17 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 [U. S. Comp. St. Supp. 1909, p. 1310]), provides that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities * * * for willful and malicious injuries to the person or property of another."

The sheriff's return exhibited the record of the proceedings and judgment of the Champaign county circuit court. On the hearing, relatrix admitted that the proceedings and judgment were correctly stated in the return.

Burke's declaration was in three counts. The first was the common-law count for trespass vi et armis. The second stated that Burke was 11 years old, and was attending a public school in Champaign county, of which relatrix was the teacher; that relatrix, under pretense of inflicting punishment upon him for some alleged infraction of the rules, kept him after school, and then and there, without any just or sufficient excuse, unlawfully, willfully, wantonly, and maliciously struck and beat him violently with a certain stick or club; that the punishment administered as aforesaid was grossly and maliciously excessive; whereby he was permanently injured, etc. The third also detailed a "wanton and malicious" assault with a stick and club.

Relatrix pleaded the general issue; also that the alleged assault was only a moderate and proper punishment of Burke as pupil by relatrix as teacher; and, further, that the alleged assault occurred while relatrix was making a proper defense against an assault by Burke.

On issues so tendered, and closed by Burke's general replication, the jury returned a general verdict of guilty and assessed Burke's damages at $1,800. Judgment in due form was entered. Relatrix prayed an appeal to the Appellate Court of Illinois, but the appeal was never perfected; and no bill of exceptions, preserving the evidence and the instructions of the court to the jury, was ever filed.

At the habeas corpus hearing the District Court permitted relatrix, over appellant's objection, to go into her side of the merits of the alleged assault. Appellant introduced no evidence touching the original occurrence on which the declaration was based.

H. I. Green and William M. Acton, for appellant.
W. A. Perkins, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). If the District Court and this court were at liberty to inquire de novo into the question whether relatrix inflicted a willful and malicious injury upon the person of her 11 year old pupil, a fair answer could not be given from this record. Relatrix and her witnesses gave their present version of her side of the story (some of them admitting on cross-examination that they were adding matters not testified to by them in the state court); but the boy and his witnesses did not attend the hearing in the District Court. We could not properly pass upon the truth of the original charge de novo, without considering the testimony in support of the charge.

Relatrix's direct adversary in the District Court was not the boy, but the sheriff; and he evidently thought that he was doing his full duty as a disinterested officer of the law when in response to the demand that he show cause why he detained relatrix in custody he produced the writ he held and the record of the proceedings and judgment on which the writ was issued. And so he was; for a writ of habeas corpus cannot lawfully be used as a means of bringing the original parties into court to relitigate their original controversy—it cannot even be used lawfully to review and revise alleged errors of law or fact in the original litigation. "No court may properly release a prisoner under conviction and sentence of another court, unless for want of jurisdiction of the cause or person, or for some other matter rendering its proceedings void. Where a court had jurisdiction, mere errors which have been committed in the course of the proceedings cannot be corrected upon a writ of habeas corpus, which may not in this manner usurp the functions of a writ of error." Kaizo v. Henry, 211 U. S. 146, 29 Sup. Ct. 41, 53 L. Ed. 125, and cases there cited. Also Ex parte Watkins, 3 Pet. 193, 7 L. Ed. 650, and In re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110.

The character of the "liability," as that word is used in amended section 17 (2) of the bankruptcy act, is not changed by the fact that the liability was reduced to judgment. Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754; Boynton v. Ball, 121 U. S. 457, 466, 7 Sup. Ct. 981, 30 L. Ed. 985; Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 292, 8 Sup. Ct. 1370, 32 L. Ed. 239. The question, therefore, is whether the judgment of the state court is conclusive evidence of a liability of relatrix for a willful and malicious injury to the person of the judgment plaintiff.

"Willful and malicious injury," in the bankruptcy act and everywhere in the law, does not necessarily involve hatred or ill will as a state of mind, but arises from "a wrongful act, done intentionally, without just cause or excuse." "In order to come within that meaning as a judgment for a willful and malicious injury to person or property, it is not necessary that the cause of action be based upon

special malice, so that without it the action could not be maintained." Tinker v. Colwell, 193 U. S. 473, 485, 24 Sup. Ct. 505, 508, 48 L. Ed. 754.

In the second and third counts of the declaration the charge was explicitly made that relatrix inflicted the injury willfully and maliciously; that she intentionally overstepped her authority as teacher, and administered an excessive punishment without just cause or excuse. By her pleas of denial, of authority as teacher, and of self-defense, she accepted the gage; and the jury found her guilty. What the evidence was, what the instructions were, we do not know; nor, if the second and third were the only counts, could we inquire, for unquestionably a judgment thereon would be conclusive that in fact and in law the relatrix had inflicted a willful and malicious injury upon the person of the judgment plaintiff.

Relatrix contends that under the first count, for trespass vi et armis, a recovery could be had without proof of a willful and malicious injury, and thereupon insists that it was not erroneous for the District Court to inquire de novo into the real nature of the alleged assault. If the assumption as to the character of the first count were warranted, the predicated result would not follow. The most that would be authorized (if anything) would be to show that at the trial in the state court no evidence was introduced in support of the second and third counts, and that the evidence which was introduced under the first count did not tend to prove a willful and malicious injury. This, not on the theory of disputing the record or questioning the adjudication, but on the theory that the record was ambiguous, and that therefore evidence dehors the record was proper and necessary to disclose what in truth had been adjudicated. The assumption, however, is unwarranted, for by the law of Illinois (as generally elsewhere) a judgment for damages under a count for trespass vi et armis cannot lawfully be rendered except upon proof of a willful and malicious injury. Jernberg v. Mix, 199 Ill. 254, 65 N. E. 242; Gilmore v. Fuller, 198 Ill. 143, 65 N. E. 84, 60 L. R. A. 286; Forsyth v. Vehmeyer, 176 Ill. 365, 52 N. E. 55; In re Mullen, 118 Ill. 551, 9 N. E. 208; In re Murphy, 109 Ill. 31; Paxton v. Boyer, 67 Ill. 133, 16 Am. Rep. 615; Razor v. Kinsey, 55 Ill. App. 605; Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754; McChristal v. Clisbee, 190 Mass. 120, 76 N. E. 511, 3 L. R. A. (N. S.) 702. And the full faith and credit to which the judgment of the state court is entitled would not be rendered if a doubt were entertained that the jury under proper instructions based their verdict on sufficient evidence.

The order appealed from is reversed, and the cause is remanded to the District Court with the direction to dismiss the petition.

SEAMAN, Circuit Judge (concurring). The bankruptcy act in plain terms (section 17) excludes from the benefit of a discharge liabilities "for willful and malicious injuries to the person or property of another"; so, if the judgment introduced against the bankrupt awards recovery upon an issue of liability thus defined, the constitutional re-

quirement that it receive full faith and credit leaves no escape from the conclusion for reversal of the order appealed from. No question arises, as I believe, for interpretation of the further provisions whereby liabilities for fraud or other wrongful conduct affecting property rights (plainly distinguishable from the injuries above mentioned) are likewise excluded from discharge in bankruptcy.

The judgment referred to is that of a circuit court of the state of Illinois, and the authorities in Illinois, cited in the prevailing opinion, clearly prescribe the issues, as tendered under each and every count of the declaration upon which the judgment rests, to require proof of willful and malicious injury to the person of the plaintiff therein. It is my understanding, not only that the rule thus stated is in accord with the general rule of pleading at common law, but that such decisions are controlling in this forum, and leave no inquiry open in the present proceeding, either upon the merits of the controversy thus determined, or as to the evidence introduced at the trial. The foregoing view does not rest in any sense on the rule upheld in Tinker v. Colwell, 193 U. S. 473, 480, 24 Sup. Ct. 505, 48 L. Ed. 754, although well supported by the opinion in that case. The single question there involved was quite different, namely, whether a judgment in favor of a husband for damages arising out of criminal conversation with his wife was within the above-mentioned provision as implying willful and malicious injury to person or property of the husband. I concur for reversal.

GROSSCUP, Circuit Judge (dissenting). The policy of the Bankruptcy Law is to discharge all honest debtors who have fallen into insolvency, that they may have another opportunity in the race of life. The debtors excepted from this general policy are those who have become such through "fraud," or through the obtaining of property "by false pretenses or false representations," or through the committing of "willful and malicious injuries to the person or property of another." Under the old bankruptcy law, the exception founded on fraud could only be made out by the disclosure of "a fraud involving moral turpitude or intentional wrong," and did not extend to a mere fraud implied by law. Hennequin v. Clews, 111 U. S. 676, 681, 4 Sup. Ct. 576, 28 L. Ed. 565; Forsyth v. Vehmeyer, 177 U. S. 177, 20 Sup. Ct. 623, 44 L. Ed. 723 (quotation from Tinker v. Colwell, 193 U. S. 488, 24 Sup. Ct. 509, 48 L. Ed. 754). The Supreme Court does not hold that "fraud," as the word is employed in the present bankruptcy act, is met by anything less than the foregoing, for it says (Tinker v. Colwell, 193 U. S. 489, 24 Sup. Ct. 509, 48 L. Ed. 754):

"Assuming that the same holding would be made in regard to the fraud mentioned in the present act, it is clear that the cases are unlike. The implied fraud which the Court in the above-cited cases released was of such a nature that it did not impute either bad faith or immorality to the debtor, while in a judgment founded upon a cause of action, such as the one before us [crim. con.] the malice which is implied is of that very kind which does involve moral turpitude."

And, of course, a debtor who has become such through the obtaining of property by false pretenses or false representations (the second

element in the list of exceptions), necessarily has become such debtor by bad faith, or conscious wrong. Up to this point then, so far as the Supreme Court has construed the present bankruptcy act, the exceptions are founded upon the element of bad faith or conscious wrong involved in the debts from which release is-asked.

Is the third exception, "willful and malicious injuries to the person or property of another," to receive a like interpretation? I am deeply impressed with the belief that such will be the interpretation put upon it by the Supreme Court when the question is squarely presented to that Court. This impression is founded, first, upon the care that the Court has taken in Tinker v. Colwell to exclude any contrary impression; for in every sentence of the Court's opinion, stress is laid upon the element of actual bad faith and moral turpitude involved in the particular debt before the Court.

"The judgment here mentioned comes, as we think," says the Court, "within the language of the statute reasonably construed. The injury for which it was recovered is one of the grossest which can be inflicted upon the husband, and the person who perpetrates it knows it is an offense of the most aggravated character; that it is a wrong for which no adequate compensation can be made, and hence personal and particular malice towards the husband as an individual need not be shown, for the law implies that there must be malice in the very act itself, and we think Congress did not intend to permit *such an injury* to be released by a discharge in bankruptcy." (The italics are my own.)

I am also impressed that it is the interpretation that, to carry out the intention of Congress, ought to be put upon the phrase as used in the bankruptcy act. The exception is in the nature of a denial—the denial of something that all others obtain. And it seems to me that Congress meant that this denial should be interposed, not upon any mere fiction of the law, or any mere empty implication of the law, but only upon the disclosure of something, in the transaction out of which the debt arose, that gives to it the color of bad faith or conscious wrong doing.

The case before us is that of a school teacher, who, in the lawful exercise of her power to inflict punishment, has inflicted excessive punishment. I say this is the case before us, because unless such be a "willful and malicious injury" within the meaning of the bankruptcy act, the judgment in the trespass suit is not conclusive upon the bankruptcy Court; for, by the law of Illinois and most common law jurisdictions, under the issue raised by the first count (trespass vi et armis for simple assault and battery), the pleas of moderate castigavit and son assault demesne, and the replication de injuria, a recovery could be had for an excess of force employed by the relatrix beyond reasonable chastisement, assuming, of course, that the evidence submitted warranted such recovery. Ayres v. Kelley, 11 Ill. 17; Fortune v. Jones, 30 Ill. App. 116; Hannen v. Edes, 15 Mass. 347; Bennett v. Appleton, 25 Wend. 371; Devine v. Rand, 38 Vt. 621. And, for the purposes of this appeal, the scope of that judgment, where doubt or ambiguity exists, must be construed most strongly against him who invokes it as res judicata; from which it follows, that the verdict returned, being a general verdict (and being as applicable to the first

count as to the second or third counts) is as applicable to a case of mere excess of force, initially lawful, employed beyond reasonable chastisement, though without any conscious or designed wrong-doing, as it would be to a case of assault originating in conscious wrong-doing.

No one pretends that a school teacher chastising a pupil, or a master of a vessel punishing some member of his crew, or an individual resisting an assault, may not, without actual malice, go beyond the force actually needed and therefore make themselves liable to a civil action for trespass vi et armis. In each of these cases, the malice imputed may be the mere "fiction of malice"—a fiction created to give the complaining party a standing for a civil suit in the form of action selected. There is in such conduct, unless of course actual malice is shown, no bad faith or conscious wrong—nothing indeed that distinguishes the moral quality of the act from the moral quality of the owner of a factory who allows his employees to come into contact with defective machinery, or the owner of a carriage who takes in a passenger with knowledge that he has a defective vehicle, or, as put by Justice Peckham in Tinker v. Colwell, supra, "one who negligently drives through a crowded thoroughfare and negligently runs over an individual, would not, as I suppose, be within the exception."

True, in In re Murphy, 109 Ill. 31, it was said that malice was the gist of an action of trespass for assault and battery; but it was not ruled that mere malice, as a fiction of law, was the same thing as conscious wrong-doing. The facts in In re Murphy are not given. The case relied on as a precedent was First National Bank of Flora v. Burkett, 101 Ill. 392, 40 Am. Rep. 209, in which it was said:

"It (malice) in some cases implies a wrong inflicted on another, with an evil intent or purpose, and this is the sense in which it is employed in the statute."

And for anything appearing in In re Murphy, it was that kind of malice that was there shown. Indeed, the Court says, speaking of the facts before it (as already said, the facts are not reported):

"Here there was an intent to do harm, and an unlawful execution of that intent, resulting in the infliction of a wrong and injury upon another. Under such circumstances was malice the gist of the action?"

And that this, in its application to the State insolvent law, is as far as the Supreme Court of Illinois meant to go (considering the case as one of actual malice and not mere malice by fiction of law) is shown by that Court in the subsequent case of Jernberg v. Mix, 199 Ill. 254, 256, 65 N. E. 242, where it is said:

"The term 'malice,' as used in the act in question (the insolvent act) applies to that class of wrongs which are inflicted with an evil intent, design or purpose. It implies that the guilty party was actuated by improper or dishonest motives, and requires the intentional perpetration of an injury or a wrong on another."

Let me not be misunderstood. As I understand the Supreme Court of the United States in Tinker v. Colwell, and the Supreme Court of Illinois in the cases just spoken of, a distinction is observed, where the bankruptcy and insolvent laws are involved, between malice as a fiction of law and malice arising from bad faith or conscious wrong-

doing. Indeed, in the supposititious case stated by Justice Peckham, the form of action might have been trespass vi et armis or trespass on the case, that is to say might have been an action implying malice by fiction of law, or an action not implying malice at all, depending, on the election of the plaintiff, whether he counted upon the negligence or upon the forcible invasion of his right to security as the basis of recovery. Percival v. Hickey, 18 Johns. (N. Y.) 257, 9 Am. Dec. 210. That Congress intended that discharge from debts, under this exception to the general policy of the bankruptcy law, should be granted or denied, not according to the real inherent quality of the transaction out of which the debt arose, but wholly in accordance with the accident whether recovery is sought in one form of action or another, I cannot believe; for whether, as a mere fiction of law, there be malice or not, the moral character of the wrong complained of is the same, the evidence alone determining the animus of the act. And in the case before us, the evidence alone can determine whether or not the excessive punishment was due to an honest mistake of judgment or want of due care, or whether it was due to motives of ill-will, hatred and malevolence.

I am giving expression to this dissent because, in my judgment the majority opinion misinterprets Tinker v. Colwell (and in that decision there were four dissenting justices); and because this misinterpretation, unless this clause of the bankruptcy act is construed by the Supreme Court, is liable to be followed by what seems to me an unjust, if not unauthorized, application of the law.

One other phase of this question has thus far wholly gone unnoticed. The phrase, in the bankruptcy act, is "willful and malicious injuries." If this means that willfulness and malice, even though the malice be merely a fictitious malice, must concur, then the case of a school teacher, master of a vessel, or party assaulted, who uses more force than what is needed, but does it without consciousness of such excess, cannot be said to be willful, for "willful" means conscious intention. And to put such an interpretation upon the phrase—joining the two words as characterizing the act—brings this third exception into line with the first and second exceptions, to-wit, "fraud" and the obtaining of property by "false pretenses or false representations."

I am not sure that the order appealed from in this case should be affirmed. That might preclude the holder of the judgment from showing, in some appropriate way, that the injury was actually malicious. But the judgment from which this is a dissent, on the other hand, accepts the judgment in the trespass suit as res judicata, and thereby forestalls any appropriate inquiry as to whether the injury was without actual malice, bad faith, or conscious wrong-doing.