FRANK L. WELLMAN, ADMR. OF KATE STONE'S ESTATE *v.* BARNEY E. MEAD.

Special Term at Brattleboro, February, 1918.

Present:  WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed May 20, 1919.

*Foreign Statute—When Penal—When Remedial—Enforcement —Evidence—Relevancy—Harmless—Speed of Automobile —Instructions — Negligence — Pleading — Survivorship— Judicial Notice—Necessity to Allege Foreign Statute Relied Upon—Amendment—Avoiding Reversal—Close Jail Certificate—Court's Discretion—Wilful and Malicious Act.*

The courts of one state will not enforce the penal statutes of another state.

The question whether the statute of one state is penal in the international sense, so that it cannot be enforced in the courts of another state, depends on whether its purpose is to punish an offence

against the public justice of the state or to afford a private remedy to a person injured by the wrongful act.

Chap. 171, sec. 2, Rev. Laws, Mass., providing for the recovery for the death of one occasioned by the negligent act of another, is remedial in character and not penal in the international sense.

When a private statutory action is transitory, and the right has become fixed and liability been incurred in the state where the transaction occurred, such right of action may be enforced in another state provided the statute is not contrary to the public policy of the state in which it is sought to be enforced.

The Massachusetts statute providing for the recovery for the death of one occasioned by the negligent act of another is not contrary to our public policy and will be enforced by our courts.

*Adams* v. *Fitchburg* R. R. Co., 67 Vt. 76, overruled

An objection to evidence on the ground of irrelevancy and immateriality is without merit when the excepting party testified in direct examination to the same thing.

Certain evidence, if inadmissible, was harmless, since other evidence of the same matter was received without objection.

In an action for death from injuries received in an automobile accident, evidence that the defendant was driving at a high rate of speed about two miles from the place of accident was admissible, in connection with other evidence, on the question of his rate of speed at the time of the accident.

Since the Massachusetts statute makes a person liable for the death of another occasioned by his negligence, it was not error for the court, in its charge as to what constituted negligence, to fail to distinguish between carrying passengers for hire and carrying them gratuitously.

In an action under the Massachusetts statute it is not necessary to allege that the action survives under any law or statute of Massachusetts, because the right of action is given to the executor or administrator of the deceased for the benefit of the widow and the next of kin, and accrues only on the death of the kinsman, and no question of survivorship is involved.

Courts do not take judicial notice of foreign laws or the laws of other states.

When a statute of another state is relied upon as establishing a right of action, the complaint should set forth the statute and facts so specifically that the court can see that the plaintiff has a right of action against the defendant.

The plaintiff's complaint is defective for failing to set forth the Massachusetts statute on which the right of action is based.

The case having been tried in all respects as it would have been had the statute been pleaded, an amendment setting forth the statute will be permitted under the Practice Act (G. L. 1796), to avoid a reversal.

Whether or not a plaintiff in a tort action is entitled to a close jail certificate under G. L. 2384 is a question of fact for the trial court, not reviewable if there is any supporting evidence.

There being evidence that the defendant operated his automobile with reckless and wanton disregard for the safety of his passengers, the trial court was warranted in granting a close jail certificate.

The malice contemplated in section 17 (2) of the Federal Bankruptcy Act, excepting liabilities for wilful and malicious injuries to the person or property of another from the operation of a discharge in bankruptcy, is the intentional doing of a wrongful act, in disregard of what one knows to be his duty, to the injury of another.

TORT FOR NEGLIGENCE based on the Massachusetts statute. Plea, the general issue. Trial by jury at the September Term, 1917, Windham County, *Stanton*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Chase & Chase* and *Wm. R. Daley* for the defendant.

*Barber & Barber* for the plaintiff.

TAYLOR, J.   Plaintiff sues to recover damages for the death of his intestate, claimed to have been caused by the negligence of the defendant. Trial was by jury with verdict and judgment for the plaintiff and the defendant brings exceptions. The accident in question occurred October 31, 1916, while intestate was riding as a passenger in an automobile driven by the defendant. The occupants of the automobile were the defendant, plaintiff's intestate, her husband, and one Harrington. All were residents of Brattleboro, this State. Intestate's husband had employed the defendant to take the party to Springfield, Mass., and return, and the accident happened on the return trip between 11 and 12 o'clock at night. At a point about a mile below South Deerfield, Mass., the highway they were traversing makes a sharp turn

through an underpass.   The defendant failed to negotiate the
turn properly and the automobile· collided with the stone abut-
ment of the underpass, wrecking the car and inflicting injuries
upon the intestate from which she died December 13, 1916.   The
declaration charges negligence in the operation of the automobile
as the proximate cause of the injury and counts on a recovery
under the laws of the Commonwealth of Massachusetts,.alleging
damages in the sum of $5,000.

It is desirable to consider at the outset the questions raised
by defendant's motions.   At the close of the plaintiff's evidence,
and again at the close of all the evidence, the defendant moved
for a directed verdict and to dismiss the action for want of juris-
diction.   The court overruled the motions *pro forma* and the de-
fendant was allowed exceptions.   Several grounds are specified,
all based, however, on the claim that the statute of Massachusetts
under which the plaintiff seeks to recover is a penal statute and
is not enforceable in the courts of this State.   Chief Justice
Marshall has given us the following fundamental maxim of
private international law:   ''The courts of no country execute
the penal laws of another.''   The Antelope, 10 Wheat. 66, 123,
6 L. ed. 268, 282.   Thus, the courts of one state will not enforce
the penal statute of another state.   *Adams* v. *Fitchburg R. R.
Co.,* 67 Vt. 76, 30 Atl. 687, 48 Am. St. Rep. 800; *Blaine* v. *Cur-
tis,* 59 Vt. 120, 7 Atl. 708, 59 Am. Rep. 702; *Farr* v. *Briggs'
Estate,* 72 Vt. 225, 47 Atl. 793, 82 Am. St. Rep. 930.

It is essential to a proper determination of the question
presented by the motions to consider the scope and meaning of
this maxim.   The words ''penal'' and ''penalty'' have been used
in various senses in our municipal law.   Failure to recognize
this fact and to give the words a common interpretation when
considering statutes in their international aspect have, we be-
lieve, led to much of the confusion found in the cases.   In *Adams*
v. *Fitchburg R. R. Co.,* this Court had under consideration a
statute of Massachusetts similar to the one involved here.   It was
there said that in considering whether the statute in question
was penal or remedial the true test was whether the main pur-
pose of the statute was the giving of compensation for an injury
sustained, or the infliction of a punishment upon the wrongdoer.
Applying this test, the Court held that the statute was penal, and
that the action on it could not be maintained here.   The defend-
ant contends, and we think rightly, that the statute now in ques-

tion cannot be distinguished in this regard from the one then under consideration. While the Adams case, if followed, would dispose of the case at bar in the defendant's favor, for reasons that will presently appear we think the question should be re-examined.

The evident tendency of modern decisions is toward a broader comity in the enforcement of rights created by the legislation of sister states. *Walsh* v. *Boston & Maine R. R.*, 201 Mass. 527, 88 N. E. 12. It is probable that the trend in this direction has been influenced to quite an extent by certain decisions of the Supreme Court of the United States. The question when a statute of another state should be regarded as penal presents an important Federal aspect that was apparently overlooked in the Adams case. While, of course, the full faith and credit clause of the Federal Constitution does not relate to the statutes of a sister jurisdiction, and it is everywhere recognized that the obligation to enforce rights growing out of such statutes rests in a sense on the principles of comity among the states, nevertheless, the fact that it ceases to be a matter of comity and involves a Federal question when the suit is on a judgment secured in the courts of the enacting state, makes it desirable, for the sake of uniformity, that the rule prevailing in the Supreme Court of the United States should be adopted by the state courts. *Huntington* v. *Attrill,* 146 U. S. 657, 36 L. ed. 1123, 13 Sup. Ct. 224, decided in December, 1892, has come to be regarded as a leading case on the question and marks the departure referred to above. The case involved a statute of New York imposing liability to creditors of a corporation upon its officers who make a false certificate of the condition of the corporation. Plaintiff sued the defendant in New York as a stockholder and director of a corporation liable under this statute and recovered judgment. He brought a bill in chancery in Maryland to set aside an allged fraudulent transfer of stock and to recover the New York judgment. The Court of Appeals of Maryland held that the New York statute was penal and declined to entertain jurisdiction. 70 Md. 191, 16 Atl. 651, 2 L. R. A. 779, 14 Am. St. Rep. 344. Thereupon plaintiff took the case to the Supreme Court of the United States on a writ of error. It was there held that the question whether the Maryland court had denied due faith and credit to the New York judgment was a Federal question and that if a suit to enforce a judgment ren-

dered in one state, and which has not changed the essential nature of the liability, is brought in the courts of another state, the Federal Court, in order to determine on writ of error whether the court of the latter state has given full faith and credit to the judgment, must determine for itself whether the original cause of action was penal in the international sense. It was said that if the state court, in an action to enforce the original liability under the law of another state, passes upon the nature of that liability and nothing else, the Court cannot review its decision; but if the state court declines to give full faith and credit to a judgment of another state because of its opinion as to the nature of the cause of action on which the judgment was recovered, the Court, in determining whether full faith and credit have been given to that judgment, must decide for itself the nature of the original liability.

Upon an exhaustive examination of the question the Court held that the question whether a statute of one state which in some aspects may be called penal is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offence against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. It should be noted that the rule embraces not only prosecutions and sentences for crimes and misdemeanors, but all suits in favor of the state for the recovery of pecuniary penalties for the violation of municipal laws. *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 32 L. ed. 239, 8 Sup. Ct. 1370. By this classification penal laws which cannot be enforced extraterritorially are confined to laws defining and punishing offences against the state. *Huntington* v. *Attrill, supra; Dennick* v. *Central R. R. Co.*, 103 U. S. 17, 26 L. ed. 441.

The rule laid down in *Huntington* v. *Attrill* has been reaffirmed in *Northern Pacific R. R. Co.* v. *Babcock*, 154 U. S. 190, 38 L. ed. 958, 14 Sup. Ct. 978, and *Brady* v. *Daley*, 175 U. S. 148, 44 L. ed. 109, 20 Sup. Ct. 62. It has been adopted and followed by several state courts in their later decisions. See *Gulledge Bros. Lbr. Co.* v. *Wenatchee Land Co.*, 122 Minn. 266, 142 N. W. 305, 46 L. R. A. (N. S.) 697; *Louisville N. R. Co.* v. *McCaskell*, 98 Miss. 20, 53 South. 348; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 120 N. E. 198. In *Hill* v. *Boston & Maine R. R.*, 77 N. H. 151, 89 Atl. 482, Ann. Cas. 1914 C, 714, the rule in

*Huntington* v. *Attrill* is quoted with approval, the court saying that where the controlling purpose of a statute is to impose a punishment for violating its provisions it will not be enforced in a foreign jurisdiction; but that a statute within this rule may be penal in one aspect and remedial in another. In *Great Western Machinery Co.* v. *Smith,* 87 Kan. 331, 124 Pac. 414, 41 L. R. A. (N. S.) 379, Ann. Cas. 1913 E, 243, it was said that the rule that a penal statute of another state will not be enforced applies only to statutes entirely penal, and not to those that are in part compensatory. To the same effect is *Southern Ry. Co.* v. *Decker,* 5 Ga. App. 21, 62 S. E. 678.

The question involved in *Huntington* v. *Attrill,* was before the judicial committee of the Privy Council of England upon an appeal from Canada in a suit between the same parties. Lord Watson delivered the opinion of the judges, among whom was Chancellor Halsbury, in which it was held that the action was not in the sense of international law, penal, or, in other words, an action in behalf of the government or community of the State of New York for punishment of an offence against their municipal law. Among other things he said: "A proceeding, in order to come within the scope of the rule, must be in the nature of a suit in favor of the state whose law has been infringed. All the provisions of municipal statutes for the regulation of trade and trading companies are presumably enacted in the interest and for the benefit of the community at large; and persons who violate these provisions are, in a sense, offenders against the state law as well as against individuals who may be injured by their misconduct. But foreign tribunals do not regard these violations of statute law as offences against the state unless their vindication rests with the state itself, or with the community which it represents. Penalties may be attached to them, but that circumstance will not bring them within the rule, except in cases where these penalties are recoverable at the instance of the state, or of an official duly authorized to prosecute on its behalf, or of a member of the public in the character of a common informer." *Huntington* v. *Attrill,* 8 T. L. R. 341, A. C., 150.

The trend of modern decision is very well stated in 21 R. C. L. 225, where it is said that the test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual;

that a distinction has been made between statutes which are entirely penal, their sole purpose being to punish a violation of the law for the public benefit, and those which are in part compensatory, the violator being required to make good to an individual a possible loss having some connection with his default; and that it is universally held that statutes of the former character can be executed only by the sovereignty enacting them; but that by the weight of later authority, and by the better reason, actions may be maintained anywhere to enforce the liability to an individual created by statutes of the latter kind. *Huntington* v. *Attrill,* then recently decided, was not cited in *Adams* v. *Fitchburg R. R. Co.,* and evidently was not considered. However, it was before the Court in *Farr* v. *Briggs' Estate, supra,* and the rule now under consideration was quoted, though not expressly approved. The distinction on which the rule is based is recognized in several of our cases. Thus, in *Hubbell* v. *Gale,* 3 Vt. 266, an action by a common informer to recover usury received by the defendant of a third person under a statute then in force, the Court said: "The statute is partly remedial and partly penal; remedial as to the right given to the party paying to recover back the money, and penal as to the right for any other person to sue for it on his neglect. Where a statute gives an action to a stranger to recover a forfeiture, he is a common informer, and the action a penal action; though it is otherwise where the statute gives damages, either single or accumulative, as a compensation to the party aggrieved." To much the same effect is *White* v. *Comstock,* 6 Vt. 405, and *Moore* v. *Jones,* 23 Vt. 739, Fed. Cas. No. 9768. *Burnett* v. *Ward,* 42 Vt. 80, reviews the earlier cases and points out the distinction between actions strictly penal and actions for the recovery of damages in the nature of a penalty. The reasoning in *Burnett* v. *Ward* is referred to with approval in *Guild* v. *Prentis,* 83 Vt. 212, 217, 74 Atl. 1115, Ann. Cas. 1912 A, 313, where the statute giving the party injured treble damages for cutting trees without leave of the owner was considered and held not a penal statute. We have other cases, holding, in effect, that a statute giving a party aggrieved the right to recover cumulative damages, or a fixed compensation for an injury, though denominated a forfeiture, is a remedial and not a penal statute. *Newman* v. *Waite,* 43 Vt. 587; *Spaulding* v. *Cook,* 48 Vt. 145; *Lewis* v. *Brainard,* 53 Vt. 510; *Payne* v. *Sheets,* 75 Vt. 335, 349, 55 Atl. 656. The rule laid down in *Huntington* v.

*Attrill* is not out of harmony with the views generally expressed in our cases and furnishes, we think, a satisfactory test whether the statute in question is penal in the international sense.

The statute declared on provides: "If·a person or corporation by his or its negligence, or by the gross negligence of his or its agents or servants, while engaged.in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service, he or it shall be liable in damages ·in the sum of not less than five hundred nor more·than five thousand dollars to be assessed with reference to the degree of his or its culpability or that of his or its agents or servants, to be recovered in an action of tort, commenced within one year after the injury which caused the death, by the executor or administrator of the deceased, one-half thereof to the use of the widow and one-half to the use of the children of the deceased; or, if there are no children, the whole to the use of the widow; or, if there is no widow, the whole to the use of the next of kin." Revised Laws of Mass., Chap. 171, § 2. It must be conceded that this statute is in one sense penal. The damages are not limited to compensation but are proportional to the defendant's guilt. A minimum recovery of five hundred dollars is allowed in any case, and the damages in excess of that sum are to be assessed with reference to the degree of defendant's culpability. It was upon this view of the statute involved in *Adams* v. *Fitchburg R. R. Co.* that the court declined to retain jurisdiction. But, as we have seen, that is not the true test of the character of the statute in determining the question whether it is a penal statute within the rules of private international law. One defect in the reasoning of the Adams case is the assumption that the decisions of the courts of Massachusetts respecting the nature of the action bind the court of this State upon the question of their jurisdiction. For obvious reasons the question presented ·to the court of another jurisdiction could not rise in the state where the statute was enacted. While the Supreme Judicial Court of Massachusetts has characterized this and similar statutes as penal for some purposes, it has not meant to hold that they are penal for every purpose. Indeed, it is stated in *Boot Mills* v. *B. & M. R. R.*, 218 Mass. 58 , 106 N. E. 680, that whether they are penal in the international sense is left an open question. This gratuitous suggestion carries a pretty broad hint that that court does not regard the statute as strictly penal. But it is the court appealed

to that must determine whether the foreign statute whose en-
forcement is sought is of such a character, in view of its evident
purpose, that it in effect requires the imposition of punishment
for a crime against the laws of another state, or whether it only
requires the vindication of private statutory rights of a transi-
tory nature. *Hill* v. *B. & M. R. R., supra; Loucks* v. *Standard
Oil Co., supra; Huntington* v. *Attrill, supra.*

Viewing the statute in the light of the policy and purpose
disclosed by the history of legislation in Massachusetts respect-
ing liability for death by wrongful act (as to which see *Hudson*
v. *Lynn & Boston R. R. Co.,* 185 Mass. 510, 71 N. E. 66, and
*Brooks* v. *Fitchburg, etc., St. Ry. Co.,* 200 Mass. 8, 86 N. E. 289),
we think it is manifest that it is remedial in character and not
penal in the international sense. Massachusetts is one of the
very few states that has not adopted the essential features of
Lord Campbell's Act. But for these statutes, no provision has
there been made for the recovery of damages in such a case by
the widow and next of kin. This fact and a study of the de-
velopment of the statutes leads to the irresistible conclusion that
the dominant purpose running through all this legislation is
reparation to the family. Punishment of the wrongdoer is only
incidental to the redress afforded for a private wrong. The
character of the statute, in the sense we are now considering, is
not dependent upon the nature of the damages. They may be
compensatory or punitive, according to the statutory scheme, and
the remedy be private or civil, and not public or penal. *Loucks*
v. *Standard Oil Co., supra.*

Thus far we have considered only whether the statute is
penal or remedial in the international sense. It remains to con-
sider whether the action being private, and therefor transitory,
is consistent with public policy as expressed by the laws of this
State. Whether our courts will entertain an action on this
statute depends upon the general principles to be applied in
determining whether actions founded upon the laws of other
states will be heard here. The general rule is that when the
action is transitory and the right has become fixed and liability
been incurred in the state where the transaction occurred, such
right of action may be pursued and such liability enforced in
any court which has jurisdiction of such matters and can secure
jurisdiction of the parties, provided that the statute of the state
under which the cause of action arose is not inconsistent with the

public policy of the state in which the cause of action is sought to be enforced. *Dennick* v. *Central R. R. Co.*, 103 U. S. 11, 26 L. ed. 439, and cases cited in note, 14 Am. St. Rep. 354; *Hill* v. *B. & M. R. R.*, *supra; Loucks* v. *Standard Oil Co.*, *supra; Higgins* v. *Cen. N. E. & W. R. Co.*, 155 Mass. 176, 29 N. E. 534; 31 Am. St. Rep. 544; note Ann. Cas. 1913 D, 570. As said in *Loucks* v. *Standard Oil Co.*, the fundamental public policy, at least among the states of the Union, is that rights lawfully vested shall be everywhere maintained. The decisions manifest a growing conviction that only exceptional circumstances should lead one of the states to refuse to enforce a right acquired in another.

Comity does not require us to enforce the law of a foreign jurisdiction which is contrary to pure morals or to abstract justice, or to enforce which would be contrary to our own public policy. Some states decline to administer foreign laws unless closely analogous to their own. But the view we have taken is that a court should not, in otherwise proper cases, refuse to apply the law of a foreign state, however unlike its own, unless it be contrary to pure morals or abstract justice, or unless the enforcement would be of evil example and harmful to its own people. *Morrisette* v. *Canadian Pac. Ry. Co.*, 76 Vt. 267, 272, 56 Atl. 1102. Tested by this rule, no good reason exists for refusing to enforce this statute. While it is in some respects unlike our own, considerations of public policy do not require the courts of this State to refuse to lend their aid. The only essential difference from our statute is in the character of the damages; but we have no policy that prohibits punitive damages. They are with us a familiar feature of tort actions. It is said in *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478, 56 L. ed. 274, 32 Sup. Ct. 132, 38 L. R. A. (N. S.) 40, that the law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there. The minimum recovery fixed by the statute is not unreasonable; but it is the nature of the cause of action and not so much the character of the damages that furnishes the real test. See *Loucks* v. *Standard Oil Co.*, *supra; A. T. & S. F. R. Co.* v. *Sowers*, 213 U. S. 55, 53 L. ed. 695, 29 Sup. Ct. 397. The precise question involved here was before the Court of Appeals of New York in *Loucks* v. *Standard Oil Co.* They said: ''Our scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the

foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right, is no reason for refusing to help the plaintiff get what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. * * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."

Courts sometimes refuse to act where all the parties are non-residents. See *Morrisette* .v. *Canadian Pac. Ry. Co., supra.* But in this case the parties interested are all residents of Vermont. The kin of the deceased are without remedy except what the Massachusetts statute affords. See *Nudham* v. *Grand Trunk Ry. Co.,* 38 Vt. 294; 8 R. C. L. 736. The ends of justice would not be served by sending them to that state to litigate this matter. Besides, there is no certainty that a suit there would be possible, as it is conceivable that the defendant could not be found in that jurisdiction. We reach the conclusion that the trial court did not err in overruling the defendant's motions. So far as *Adams* v. *Fitchburg R. R. Co.* conflicts with this result, it is overruled.

The defendant was the proprietor of a garage at Brattleboro and personally operated the automobile on the trip. There was a conflict in the testimony as to the time when the party left Brattleboro. The plaintiff's evidence tending to show that it was about 9 o'clock in the evening and the defendant's evidence that it was about an hour earlier. It appeared that the distance from Brattleboro to Springfield was from 60 to 65 miles and the distance from Springfield to the place of the accident about 28 miles. Plaintiff's evidence tended to show that a stop of some 30 minutes was made in Springfield. Different witnesses were asked to fix the time of the accident. They varied in their estimates between 11:15 and 12 o'clock. The defendant testified that he left Springfield about 10:20 and that the accident occurred about 11:45. Against defendant's objection that the evidence was irrelevant and immaterial, the plaintiff was permitted to show by Mr. Stone that the defendant said on arriving at Springfield that he had been just two hours and ten minutes on the road. The exception taken is without merit, as the defend-

ant himself testified to the same thing in his direct examination.

Subject to the same objection · plaintiff was permitted to show by this witness that defendant was running faster on the return trip than going down, and by Mr. Harrington that defendant was running 30 miles an hour " and a little bit higher, off and on," on the trip down. It may be admitted that the rate of speed at which the defendant was driving on the trip from Brattleboro to Springfield was of doubtful relevancy in any view of the case; but it does not follow that the exceptions present reversible error. Both witnesses testified without objection that the car was going at the rate of 35 to 40 miles an hour at the time it struck the abutment. The theory on which the court admitted the evidence apparently was that it afforded a basis by comparison for their estimate of the rate of speed at the time of the accident. Nothing further was claimed for it. It was not relied upon as tending otherwise to show the speed of the car at or just before the time of the accident. The court expressly instructed the jury that it was not a question of how the defendant ran going down to Springfield, or how he ran somewhere else, but how he was running and operating the car as he approached the underpass. But we do not need to consider whether the evidence was admissible for the purpose of comparison. All that the witnesses testified to under exception otherwise appeared in the case without objection. The distance from Brattleboro to Springfield was given as 60 to 65 miles, and the defendant put in evidence the time taken to cover it as two hours and ten minutes. It would thus appear that the rate of speed was what the witness Harrington gave as indicated from time to time by the speedometer. This being so, if the evidence of the ·rate of speed on the trip down was inadmissible, it was harmless. It is suggested by the plaintiff that the question is not reviewable, being merely a question of remoteness and so addressed to the discretion of the trial court. While the question of remoteness ordinarily rests in the discretion of the trial court, it should be observed that there are well-recognized exceptions to the rule. See *Smith* v. *Martin,* 93 Vt. 111, 106 Atl. 666.

Other evidence of the speed at which defendant was driving at a distance from the point of the accident presents. a somewhat different question. It appeared that the defendant overtook and passed another automobile at a point on the highway from a mile and· a half to two miles south of the underpass.

Under objection and exception that the evidence was irrelevant and immaterial the plaintiff was permitted to show by Mr. Stone and the three occupants of the other car that defendant was then running from 35 to 40 miles an hour, and by the occupants of the latter car that they proceeded toward the underpass at from 18 to 20 miles an hour. It is urged that this evidence had no tendency to show at what rate of speed the defendant was driving as he approached the underpass. Standing alone this would undoubtedly be so; but other evidence makes it legally relevant. See *Tyrrell* v. *Goslant*, 93 Vt. 63, 106 Atl. 585. Both Stone and Harrington testified that the defendant maintained at least as high a rate of speed over the whole distance to the underpass, and the circumstances tend to corroborate their testimony. The road was level, smooth, and straightaway to the turn through the underpass. The automobile following came on at a slower rate and reached the underpass from five to eight minutes after the accident, according to the defendant's own testimony. The defendant testified that he was unaware of the proximity of the underpass and was within 6 or 7 feet of the abutment before he discovered it. While he testified that he encountered thick fog near the underpass and slowed down to about 8 miles an hour, the force of the impact when the car struck the abutment disproves his claim as to the speed he was then driving.

The defendant excepted to the failure of the court, in its charge as to what constituted negligence, "to make a distinction between carrying passengers for hire and carrying them gratuitously." The charge on this subject was appropriate to a case of ordinary negligence, and as such its sufficiency is not questioned. Defendant claims that there was evidence tending to show that he was carrying plaintiff's intestate free of charge, and that he was prejudiced by the failure of the court to distinguish between the care which he would be bound to exercise in carrying a passenger for hire and in carrying one gratuitously. He cites *Massaletti* v. *Fitzroy*, 228 Mass. 487, 118 N. E. 168, L. R. A. 1918 C, 264, Ann. Cas. 1918 B, 1088, to the proposition that under the law of Massachusetts different degrees of care would be required in the different circumstances. The question is controlled by the law of that jurisdiction, and it is undoubtedly true that the same degree of care is not there ordinarily required of a gratuitous bailee as of a bailee for hire, and that the measure of ordinary liability of one who undertakes to *carry*

gratis is the same as that of one who undertakes to *keep* gratis. *Massaletti* v. *Fitzroy, supra.* Plaintiff's answer to this claim is that there was no foundation in the evidence for even an inference that the defendant undertook to perform this service gratuitously. It must be conceded that the evidence had little, if any, such tendency, but we do not spend time upon that question, as the exception must be overruled for other and perfectly obvious reasons.

There would be much force in the defendant's claim if an occupant of the car were suing for personal injuries. Such person would have the common-law right of action subject to the rule the defendant contends for. But defendant's liability in this action is such as the statute imposes and depends upon the construction it should receive. The statute makes a person liable for the death of another who is not in his employment or service, if occasioned by his *negligence,* or by the *gross negligence* of his agents or servants. Thus by the express terms of the statute he is made liable in any case for ordinary negligence, when the death is caused by his own act; otherwise, there would be no occasion for the qualifying word "gross" in fixing liability for the act of his servant or agent. This is the interpretation given the statute by the Supreme Judicial Court of Massachusetts. It was said in *Brennan* v. *Standard Oil Co.,* 187 Mass. 376, 73 N. E. 472, referring to this statute: "The statute upon which the plaintiff relies recognizes or creates a distinction between ordinary negligence and gross negligence. Death caused by the personal negligence of the defendant, without fault of the deceased person, creates a liability. But for a death caused by the negligence of the defendant's servants there is no liability unless the negligence is gross."

After verdict and before judgment the defendant moved in arrest on several grounds, two of which are relied upon here. The court overruled the motion *pro forma* and allowed the defendant an exception. It is now urged that the motion should have been sustained (1) because it is not alleged in the complaint that the action survives under any law or statute of Massachusetts, and (2) because the statute under which plaintiff claims to recover is not set out in the complaint.

As to the first ground, defendant misconceives the nature of the action. The statute gives the right of action to the executor or administrator of the deceased for the benefit of the

widow and the next of kin, and it accrues only on the death of the kinsman.    Respecting such a right of action there can be no question of survivorship.

Concerning the further ground of the motion the complaint charges, among other things, in substance, that at the time and place in question plaintiff's intestate was a passenger for hire riding in an automobile owned, controlled, and operated by the defendant; that solely through the negligence of the defendant (which is specially alleged), and while in the exercise of due care upon her part, she was severely injured (in a manner set out in the complaint), resulting in her death; that she left surviving her a husband and two children, named in the complaint; that on a day named plaintiff was appointed administrator upon the estate of the deceased; and that "pursuant to the premises aforesaid and under and by virtue of the laws of the Commonwealth of Massachusetts an action has accrued to the plaintiff to have and recover his damages herein stated, which cause of action is prosecuted in accordance with the laws of the State of Vermont." Courts do not take judicial notice of foreign laws or the laws of other states, and when a statute of another state is relied upon as establishing a duty or right of action it must be set forth in the complaint and proved as a fact.    A complaint counting upon a statute of another state should set forth the statute and facts so specifically that the court can see that the plaintiff has a right of action against the defendant.    *McLeod* v. *Conn. & Pass. R. R. Co.,* 58 Vt. 727, 6 Atl. 648; *Peck* v. *Hibbard,* 26 Vt. 698, 706, 22 Am. Dec. 605; *Morrisette* v. *Canadian Pac. R. Co.,* 74 Vt. 232, 244, 52 Atl. 520.    In other words, a party relying upon the law of another state must plead it, though not necessarily *in haec verba,* and then allege such facts as bring the case within the law.    See 8 R. C. L. 816; Gould's Pl., ch. III, § 16, n. 3; *Jenness* v. *Simpson,* 81 Vt. 109, 69 Atl. 646, 130 Am. St. Rep. 1029.

It is clear that this complaint is so far defective in the respect claimed that it would not withstand a demurrer, and it is doubtful, to say the least, whether the defect is cured by the verdict.    See *Pette's Admr.* v. *Old English Slate Co.,* 90 Vt. 87, 92, 96 Atl. 596.    But the case was tried in all respects as it would have been had the statute been pleaded.    The statute was proved without any suggestion of the defect in the complaint and all questions thereunder were fully litigated.    This being so, we

spend no time over the technicality presented by the motion and grant the plaintiff's request for leave to amend in this Court. This course has the sanction of the Practice Act (G. L. 1796); besides, it being apparent from the record that the amendment would merely make the allegations conform to the proof and that the course of the trial was not affected by the omission to set out the statute, an amendment should be permitted in this Court to avoid a reversal. *Chaffee* v. *Rutland R. R. Co.,* 71 Vt. 384, 45 Atl. 750; *Baker* v. *Sherman & Miller,* 73 Vt. 26, 50 Atl. 633.

At the time of rendering judgment the court adjudged that the cause of action arose from the wilful and malicious act of the defendant "and for wilful and malicious injuries to the person and property of the plaintiff's decedent," and that he ought to be confined in close jail. Defendant objected and was allowed an exception to the finding upon the ground that it was not warranted by the evidence, and upon the further ground that the court had no right, as a matter of law, to make such a finding upon the evidence in the case and the pleadings. The only question presented by this exception about which there can be any room for doubt is whether the evidence warranted the court in making the quoted portion of the finding. Otherwise it is clearly supported in law and fact. So far as the pleadings affect the question, it is enough to say that an allegation that the act complained of was wilful and malicious is not essential. See *Flanders* v. *Mullin,* 80 Vt. 124, 66 Atl. 789, 12 Ann. Cas. 1010. If the action is founded upon a tort, on proper motion it devolves upon the trial court to say, considering the facts, whether the cause of action arose from the wilful and malicious act of the defendant, and whether he ought to be confined in close jail. G. L. 2384. It is so far a question of fact and matter of discretion that it is not reviewable here, if there is any support-ing evidence. *Larrow* v. *Martell,* 92 Vt. 435, 104 Atl. 826; *Mullin* v. *Flanders,* 73 Vt. 95, 101, 50 Atl. 813; *Sartwell* v. *Sowles,* 72 Vt. 270, 48 Atl. 11, 82 Am. St. Rep. 943; *Sheeran* v. *Rockwood,* 67 Vt. 82, 30 Atl. 689, and cases there cited. The defendant's conception of a wilful and malicious act, in contempla-tion of our statute, is erroneous. A wrong that is purposely done is wilfully done, but it is not necessary that injurious results be intended. The force given to the words "wilful and malicious," as here used, may be gathered from the following among many illustrative cases: *Hill* v. *Cox,* 54 Vt. 627; *Boutwell* v. *Harri-*

*man,* 58 Vt. 516, 2 Atl. 159; *Judd* v. *Ballard,* 66 Vt. 668, 30 Atl. 96; *Mullin* v. *Flanders, supra; Pitkin* v. *Munsell,* 90 Vt. 268, 97 Atl. 657; *Larrow* v. *Martell, supra; In re Cote,* 93 Vt. 10, 106 Atl. 519. The presiding judge certifies that the finding was based wholly upon the evidence before the jury. The transcript is referred to and made controlling. It discloses that the court had before it evidence, viewed in the light most favorable to the plaintiff, tending to show that the defendant, having sufficient intelligence and experience to comprehend the possible consequences of his act, though practically unacquainted with the road he was traveling, of his own volition and in violation of the statute relating to speed, drove his automobile carrying four passengers for hire, through a fog so thick that, as the car was lighted, he could not see more than seven feet ahead, at the rate of 35 to 40 miles an hour, over a wet and slippery macadam road, being fully aware of the danger from skidding if the brakes were suddenly applied. With evidence of such reckless and wanton disregard for the safety of his passengers before it, it is idle to say that the court was not warranted in granting a close jail certificate.

It only remains to consider whether the trial court erred in making the quoted portion of the finding. The evident intention of the court was to adapt its finding both to our statute authorizing a close jail certificate and to the provision of the Bankruptcy Act excepting liabilities for wilful and malicious injuries to the person or property of another from the operation of a discharge in bankruptcy. As we hold that the finding now under consideration would be material on the question of a discharge in bankruptcy (*Flanders* v. *Mullin, supra*), it must be subjected to the test of the meaning of the exception in the Bankruptcy Act. It is there provided: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such * * * as are liabilities * * * for wilful and malicious injuries to the person or property of another." The term "wilful and malicious injuries," as there employed, has been construed by the Supreme Court of the United States in *Tinker* v. *Colwell,* 193 U. S. 473, 48 L. ed. 754, 24 Sup. Ct. 505, and *McIntyre* v. *Kavanaugh,* 242 U. S. 138, 61 L. ed. 205, 37 Sup. Ct. 38. The rule there laid down furnishes the test to be applied here. It comes to this: The term does not necessarily involve hatred or ill will as a state of mind, but signifies a wrongful act

done intentionally, without just cause or excuse. *Peters* v. *United States,* 177 Fed. 885, 101 C. C. A. 99, affirmed without opinion in *United States* v. *Peters,* 217 U. S. 606, 54 L. ed. 900, 30 Sup. Ct. 696. The malice contemplated is involved in the intentional doing of a wrongful act, in disregard of what one knows to be his duty, to the injury of another.

The question has so recently been before the Court in the Cote case, cited above, where the exception in question was under consideration, that an extended review of the authorities is unnecessary. This and the other cases cited above are full authority for holding, as we do, that there was evidence to support the finding. Its weight and credibility are not for us, but were for the trial court.

*The defendant's exceptions are overruled. The plaintiff may amend his complaint by filing an amendment setting out the Massachusetts statute; and when such amendment is made, the judgment will be affirmed.*